# FRANK F. BELL v. H. B. MAHN.

## ERROR TO THE COURT OF COMMON PLEAS NO. 3, OF PHILADELPHIA COUNTY.

Argued March 22, 1888—Decided October 1, 1888.

The performance of an opera is a theatrical exhibition within the meaning of the act of April 16, 1845, P. L. 533, and other acts, providing that no theatrical exhibition shall be allowed in this state without a license from the state to be granted by the treasurer of the county.

Before PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; GORDON, C. J., and TRUNKEY, J., absent.

No. 161 January Term 1888, Sup. Ct.; court below, No. 502 March Term 1886, C. P. No. 3.

On May 10, 1888, a case stated was filed wherein Frank F. Bell, treasurer of the city of Philadelphia, to the use of the commonwealth of Pennsylvania, was plaintiff, and H. B. Mahn, defendant, whereby it was agreed :·

1. That the above defendant is now and has been since January 1, 1885, the lessee and manager of the Arch Street Opera House, on Arch street above Tenth street, in the city of Philadelphia ; and as such lessee and manager exhibits and per-

forms operas, consisting of airs, choruses and recitations, and that the actors appear upon the stage in stage costume, and exhibit said performances, partly in song and partly in dialogue.

2. That the said defendant has not obtained a license from the state of Pennsylvania, allowing him to show, hold, or exhibit the said operas and operatic exhibitions in said building.

If the court shall be of the opinion that the law requires the said defendant to obtain an annual license from the said state of Pennsylvania, allowing him to show, hold, or exhibit the said operas, and to give operatic exhibitions in the county of Philadelphia, then judgment shall be entered for the plaintiff and against the defendant in the sum of $500; but if the court shall be of the opinion that the law does not require the said defendant to obtain such license from the state, then judgment shall be entered for the defendant; the costs to follow judgment, and either party reserving, etc.

The case of the plaintiff was based upon the act of April 16, 1845, P. L. 533, providing:

§ 2. That no theatrical exhibition or exhibitions of circus performances or menageries shall hereafter be allowed in this commonwealth, without a license from the state; and the treasurer of any county shall have authority to grant licenses, under his hand and seal of the proper county, for such exhibition on the payment of the following sums, to wit: For every theatre or circus in the city or county of Philadelphia, the sum of $200; and for every theatre or circus in the county of Allegheny the sum of $100; and for every theatre or circus in any other county in this commonwealth, the sum of $50; for every menagerie the sum of $40: . . . . . .

By § 24, act of April 10, 1849, P. L. 575, the price of a theatre or circus license in the city or county of Philadelphia was increased to $500; in Allegheny county, to $200, and in any other county, $80. Other acts of assembly upon the subject and relied upon were: Act of May 15, 1850, P. L. 773; act of April 14, 1851, P. L. 596; act of March 30, 1864, P. L. 141; act of March 23, 1865, P. L. 642; and act of May 22, 1879, P. L. 73.

On May 29, 1887, the court, FINLETTER, P. J., ordered

judgment to be entered on the case stated, in favor of the defendant, no opinion being filed. The plaintiff then took this writ assigning said order as error.

*Mr. Jos. L. Caven* (with him *Mr. J. B. Anderson*), for the plaintiff in error :

The purpose of the legislature in the passage of the acts was twofold : 1, to regulate the conduct of exhibitions, and 2, to obtain revenue. Having this second purpose in view, it would be folly to hold that theatres were liable, and opera houses not. The opera is as much a dramatic performance as a play. This court held in Nurdlinger v. Irvine, 18 W. N. 65, that theatres and theatrical exhibitions were within the act and liable to pay the license fee. The acts being for revenue, must be construed according to their true import and meaning : United States v. Breed, 1 Sumner 159.

*Mr. John Dolman,* for the defendant in error :

If operas were intended to be included in the act of 1845, it would have been easy to say so, as was done in the act of May 22, 1879, P. L. 73, regulating a city license for places of amusement, in which operas are specially mentioned. In Rowland v. Kleber, 1 Pittsb. 68, the question was squarely decided in favor of the position of the defendant here.

OPINION, MR. JUSTICE CLARK :

Although the facts are somewhat meagrely presented in the case stated, the single question sought to be raised for the determination of this court is, whether or not the performance of an opera may be properly regarded as a theatrical exhibition, within the meaning of the act of April 16, 1845, P. L. 533, and other acts of assembly subsequent thereto, providing that no " theatrical exhibition " shall be allowed in this state without a license first had and obtained, fixing the price of such license and providing for the manner in which it may be obtained.

A theatre, among the ancients, was an edifice in which spectacles or shows were exhibited for the amusement of the spectators ; but in modern times a theatre is a house for the exhibition of dramatic performances : a theatrical exhibition

must be either such as pertains to a theatre or to the drama, for the representation of which the theatre is designed: Webster. A drama is a story represented by action: the representation is as if the real persons were introduced and employed in the action itself. It is ordinarily designed to be spoken, but it may be represented in pantomime, when the actors use gesticulation, sometimes in the form of the ballet, but do not speak; or in opera, where music takes the place of poetry and of ordinary speech, and the dramatic treatment is essentially different from either. An opera is defined to be, a musical drama, consisting of airs, choruses, recitations, etc., enriched with magnificent scenery, machinery, and other decorations, and representing some passionate action: Webster. The spoken drama, therefore, and the opera agree, in the method or manner which is essential to the dramatic art, viz., imitation in the way of action. In the former, it is true, the actor observes the rules of rhetoric and of oratory and follows the special laws of dramatic delivery; whilst in the latter, he employs the power of music, both vocal and instrumental, as a medium of artistic and passionate expression; music, however, which is not arranged with reference mainly to its melodic interest, but in such form as to express, not only the words, but the thoughts, emotions, and passions of the mind, such as joy, grief, hope, despair, etc., which the idea or conception of the play may involve. The word-setting, the orchestrazation, the musical intervals, and the composition generally, are all arranged to serve the exigency of the passing sentiment, and to turn the subject of the story into the action of the play; in short, the opera is composed with special reference to the declamatory power of music.

It is contended on part of the defendant, that the essential element of the opera is music, and of the drama, plot and action, dialogue and declamation; that the music of a modern opera is not simply an accessory to the play; that the libretto is but a peg on which to hang the music; that an opera is essentially a musical work, and its performance cannot be called a dramatic representation, and in that sense a theatrical exhibition. A quotation from Zell's Encyclopædia, to this effect, is given in support of this contention. Whilst this may be true as to the works of some of the composers of opera music,

or as to individual selections from them, it is certainly not the
general principle upon which this particular head of musical
composition proceeds.   In the recent American reprint of the
Encyclopædia Britannica, we find it stated, as the general and
well-recognized principle of the opera, that " the exigencies of
the action and the requirements of the text should rule the
musical designs in a lyrical drama, and that the instrumental
portions of the composition should, quite as much as those
assigned to voices, illustrate the progress of the scene and the
significance of the words."   This principle, which is said to
have been anticipated by Montaverde as early as 1607, in his
opera of Arianna, was recognized and followed a century and
a half later in the works of Ritter von Gluck, and is the gov-
erning principle in all the musical compositions of the late
Richard Wagner, designed for the opera.   " Such," says the
Britannica, referring to this fundamental principle, " must be
the true faith of the operatic composer; it has again and again
been opposed by the superstitious, that feats of vocal agility,
and other snares for popular applause, were lawful elements of
dramatic effect; but it has ever inspired the thoughts of the
greatest artists and revealed itself in their work, and no one
writer more than another can claim to have devised, or to have
first acted upon, this natural creed."

The opera is essentially and in every point of view a dra-
matic composition and its representation a dramatic exhibition.
It is a matter of common knowledge that some of the most
famous dramatic characters of modern times have developed
their exquisite powers upon the operatic stage.   It may of
course be conceded that music is in some sense an essential
element in the opera; in this respect it is distinguished from
the spoken drama, but the fundamental and really essential
element of both is action.

The opera house and the theatre alike comprehend the
stage, proscenium, boxes, orchestra, pit or parquet, and the
galleries; the scenic representation is of the same general
character, and the stage machinery and decorations of the
same order.   The ordinary theatre is adapted to the perform-
ance of the opera, and it is well known that this form of exhi-
bition, especially of the light opera and the opera comique,
rendered " partly in song and partly in dialogue " forms in

these days a prominent feature of theatre work. Therefore, whether the term, theatrical, in the act of 1845 be deemed a qualification of the scenic representation, or of the house and its adaptations, in which it may be effectively given, the opera would seem to be embraced within its meaning.

The legislature having determined as to the propriety and policy of requiring a license fee for all theatrical exhibitions, it would be difficult to state any reasonable ground for a distinction between the spoken and the lyrical drama, which would justify the exaction of a license fee from one and the exemption of the other. They are exhibitions of the same general character, and there is no reason why one should bear the public burden more than the other. Both are places of popular amusement, and both collect large assemblages of the people and require additional police protection. These considerations are proper in determining the intent of the legislature.

It may be that in the discussion of this case we have gone out of the record somewhat. In this we have followed the example of the learned and able counsel in the arguments which they have submitted. We have passed upon the question, however, which was sought to be raised, and this is doubtless what was desired. We are of opinion that the court erred in entering judgment for the defendant on the case stated.

> The judgment is therefore reversed and judgment is now entered for the plaintiff in the sum of five hundred dollars, and costs.