HARRY S. LEAVELL, Appellant, v. LESLIE E.
BLADES, Collector.

Division One, November 29, 1911.

1. **TAXATION: Territorial Limits: Situs of Property: Constitution: Power of Legislature.** The words of the Constitution
requiring taxes to "be uniform upon the same class of subjects within the territorial limits of the authority levying the
tax" implies that the subjects of taxation shall be within the
territorial limits of the authority levying the tax; but it does
not follow that the Legislature, if it saw fit, might not enact
a statute making the *situs* of choses in action, being intangible
personal property, the same as the domicile of the owner, for
taxation purposes.

2. ———: **Intangible Property: Never in State.** The statute
makes intangible property, never in Missouri, therefore never
sent away, non-taxable here, even though the owner may
reside here. It preserves intact the philosophy of taxation,
which is that the protection of the law of the locality gives
the right to tax property, and where that protection in nowise
exists the right to tax fails.

3. ———: ———: ———: **Note and Deed of Trust in Alaska.**
A note belonging to a resident and citizen of this State, but
which note was never in this State and which evidences a debt
created in the Territory of Alaska, payable in Alaska by a
resident of Alaska, secured upon real property in Alaska and
deposited in a bank there, is not taxable in this State. Neither
a corporation nor an individual is, by the statute, required
to pay taxes on evidences of debt outside of this State.

Appeal from Montgomery Circuit Court.—*Hon.*
*Samuel Davis*, Special Judge.

REVERSED AND REMANDED (*with directions*).

*John M. Barker* for appellant.

(1) It is not right or lawful to compel the appellant, a citizen of Missouri, to pay taxes on the note for $5000 in Alaska. Such property is not subject to taxation in Missouri, unless it has been removed from the State to avoid taxation. R. S. 1899, sec. 9147. That oath certainly means something, and cannot have any fair interpretation unless it means that there is such personal property in foreign jurisdictions that is not subject to tax in Missouri. State ex rel. v. Dunnica, 69 Mo. 454, gave a construction to the oath which I believe has never been molested. The cases in which that case has been discussed are not such as the appellant's in this case. It stands alone. But there is no law in this State to tax appellant's note in Alaska. The Assessor's warrant of authority to assess property, domestic and foreign, is in section 9121, which only allows him to assess foreign property, "made taxable by the laws of this State," plainly and affirmatively implying that there is property in foreign jurisdictions that is not taxable in Missouri; and further implying that if there is any such law authorizing such assessment, it is not section 9121. If it were intended to tax property in the furthermost corners of the world it ought to appear somewhere in the Constitution or laws. (2) If there is any statute law in Missouri authorizing the taxation of property in foreign jurisdictions, then it is void under section 3 of article 10 of the Constitution of Missouri, which provides that taxes shall be uniform, and shall be levied and collected by general laws. The Legislature by Secs. 9338 and 9339, R. S. 1899, provided therein that all railroad companies in this State should be required to pay taxes on their property in this State, and that for that reason the appellant ought not to pay any such tax as the subject of contention in this case. That act was a legislative construction that personal property

rightfully beyond the State is not the subject of taxation in this State. (3) The right of taxation rests on the power and willingness of the State to protect the property taxed. In no way could the State of Missouri protect the appellant's note or help him to collect it in Alaska. Mo. Const., sec. 5, art. 10; Turnpike Co. v. Sandford, 164 U. S. 592; Jennings v. Coal Bridge Coal Co., 147 U. S. 147; State v. St. Louis County Court, 47 Mo. 594; Curtis v. Ward, 58 Mo. 295; City of Plattsburg v. Clay, 67 Mo. App. 497; Wilcox v. Ellis, 14 Kan. 588.

*Harry C. Black* for respondent.

(1) Appellant's $5000 note in Alaska, under the evidence in this case and under the laws of the State, was assessable and taxable in Montgomery county in 1906. R. S. 1899, sec. 9121; Kirkland v. Hotchkiss, 100 U. S. 491, 15 Wall. 320; Cooley on Taxation, 85; State ex rel. v. Renshaw, 166 Mo. 682; Valle v. Ziegler, 84 Mo. 214. (2) By an act of the Legislature, approved March 28, 1881 (Laws 1881, p. 178; R. S. 1899, sec. 9121), all notes, bonds and other evidences of debt, made taxable by the laws of this State, held in any state or territory other than that in which the owner resides, are made assessable in the county where the owner resides. This act is not unconstitutional, as the situs of personalty for the purposes of taxation from time immemorial has been a matter for the law-making power, which has undoubted power in the premises. 2 Cur. Law, sec. 4, p. 1800; City of Winston v. Salem, 131 N. C. 404; City of Baltimore v. Safe Deposit & Trust Co., 97 Md. 659; School District v. Bowman, 178 Mo. 654. The words in Sec. 9121, R. S. 1899, "made taxable by the laws of this State," may imply that there is property in foreign jurisdictions that is not taxable in Missouri, but nevertheless, they can only be construed to mean and refer to notes, bonds and

other evidences of debt held and located in foreign jurisdictions, which would be taxable by the laws of this State in the event that they were held and located in this State. Notes and bonds that are made taxable by the laws of this State are: all solvent notes of whatsoever kind, secured or unsecured, owned by persons residing in this State, and all bonds of whatso ever kind, whether issued by incorporated or unincorporated companies, towns, townships, cities, counties, states or other corporations, held or controlled by persons residing in this State, whether for themselves or as guardians, trustees or agents, on which the holder or owner thereof is receiving or is entitled to receive interest for themselves or others. R. S. 1899, sec. 9123. Hence, any notes or bonds that come within the above description held in any state or territory other than that in which the owner resides, shall be assessable in the county where the owner resides. And appellant's $5000 note, being solvent, and secured by a mortgage on a mining claim, is a note within the above description and definition, and is taxable by the laws of Missouri and although it is held in Alaska, it is owned by a resident of Montgomery county, and was assessable in Montgomery county in 1906. Section 9121 is not void under section 3, article 10, Constitution of Missouri. It is a general law, and applies alike to all persons within the territorial limits, and is valid. Elting v. Hickman, 172 Mo. 237. The only prohibition in the section being discussed is that which forbids inequality, favoritism, to be exercised in imposing taxes upon the same class of subjects. So long as this is not done, the Constitution is not infringed nor the rules of uniformity and equality violated. St. Louis v. Bowler, 94 Mo. 630; Cooley on Taxation (2 Ed.), 170, 171 and notes. Section 9121 is not in violation of the Fourteenth Amendment of United States Constitution. It does not deny to appellant "the equal protection of the laws."

Leavell v. Blades.

LAMM, J.—Injunction to restrain the collection of taxes. Plaintiff, from birth, a citizen of Missouri and resident of Montgomery county, at spells was in Alaska as a gold digger. The summer of 1906 found him at home in Missouri. Then and there, applied to by the assessor of said county for a list of his taxable property, he gave in such list, and thereafter in due time paid the taxes assessed and levied against the property so listed by him. At the time of such listing he told the assessor he had while in Alaska deposited, for assay purposes in the Valdez Bank in the town of Valdez in that territory $10,000 in gold dust dug in Alaska mines. Further, that while in Alaska he had loaned a citizen of that territory like gold dust of the value of $5000, had taken a note evidencing the loan, and security in the form of a mortgage upon a mining claim there, and had left the note and mortgage in said Valdez Bank. Said gold and note were in Alaska at the time of the assessment and neither the one nor the other had ever been in Missouri. To the list then made out was appended the affidavit prescribed by section 11,351, Revised Statutes 1909, which plaintiff signed and swore to before the assessor, of which affidavit more anon. Simultaneously a controversy sprung between the two anent this gold dust and note, plaintiff refused to list them and the assessor was of opinion they should be listed. Subsequently, being advised, the assessor included the note and gold dust in the taxable property of plaintiff, and furnished an amended list to the county clerk, including said added items. Thereat taxes were levied against them and spread on the tax books of Montgomery county. Plaintiff unsuccessfully complained to the board of equalization. Afterwards he sought a remedy by *certiorari*, but was cast because the record of that board did not show sufficient data to grant relief. Thereafter he brought this suit for injunctive relief, charging that the assessment of those items and the subsequent

levy of taxes thereon were invalid for the reasons out-
lined. The chancellor's decree enjoined the collec-
tion of the tax upon the gold dust, but refused to en-
join that upon the note. Defendant, collector, stood
upon the decree without appeal. Plaintiff appealed in
apt time and due form.

There is no dispute on the facts. Those disclosed
at the trial are as stated; and the main question here
is: Under our revenue laws is a note belonging to a
resident and citizen of this State, but which note never
was in this State and which evidences a debt created in
Alaska, payable in Alaska by a resident of Alaska, se-
cured upon real property in Alaska and deposited in a
bank there, taxable in Missouri?

There are other propositions asserted by appel-
lant, but the foregoing is the main one and others
will not be reached unless that one be decided against
him.

Our Constitution prescribes (art. 10, sec. 3) that
taxes "should be uniform upon the same class of
subjects within the territorial limits of the authority
levying the tax." The phrase, "within the territorial
limits of the authority levying the tax," attaches it-
self to the noun, "subjects," as well as to the idea
of uniformity; and it may well be that our Constitu-
tion-makers had in mind that the *subjects* of taxation
should be within the territorial limits of the author-
ity levying the tax. It does not follow that the Legis-
lature might not, if it saw fit, enact a statute making
the situs of choses in action, intangible personal prop-
erty, the same as the domicile of the owner, for taxa-
tion purposes. That might be an unjust law in cases
easily put, but nevertheless it might be valid law. It
is our task then to see whether it has done that in so
clear and unmistakable a way that there can be no
two ways about it.

When the tax-gatherer puts his finger on the citi-
zen he must also put his finger on the law permitting

it. Not only so, but (if possible) our revenue laws should be so construed that the honest citizen does not bear the whole or greater part of the burden of taxation, and the tax-dodging citizen escape.

Respondent chiefly relies on section 11,337, Revised Statutes 1909. Appellant chiefly relies on section 11,351.

Section 11,337 reads: "All personal property of watever nature and character, situate in a county other than the one in which the owner resides, shall be assessed in the county where the owner resides, except as otherwise provided by section 11,355; and all notes, bonds and other evidences of debts *made taxable by the laws of this State,* held in any state or territory other than that in which the owner resides, shall be assessed in the county where the owner resides; and the owner, in listing, shall specifically state in what county, state or territory it is situate or held."

The provision of section 11,351 on which appellant lays main stress is that part of the oath, reading: ". . . And I do further solemnly swear, or affirm, that I have not sent or taken, or caused to be sent or taken, any property, money or bills, bonds or notes, or other securities or evidences of debts, out of this State to avoid taxation. So help me God."

It is a trite and cardinal canon of interpretation of statutes to attend to the state of the old law, the mischiefs arising therefrom, the remedy to be provided and then to so interpret the new law as to advance the remedy and suppress the mischief. [Decker v. Diemer, 229 Mo. l. c. 324.]

Section 11,337 was enacted in 1881 and, with immaterial (if any) changes, was the law when the assessment was made and when this case was tried. [Laws 1881, p. 177.] It was approved March, 28th, 1881. The very same Legislature by its act, approved four days before, amended the sections of the statute relating to lists to be made out by the taxpayer and the affidavit

to be made by him and attached to his assessment list, and those laws as then amended now appear without material change as sections 11,348 and 11,351, Revised Statutes 1909—said affidavit included the clause heretofore quoted from section 11,351.

Attending to the foregoing canon of interpretation, it will be profitable to examine the state of the revenue laws in the particulars in hand, as interpreted by this court prior to the time of said several enactments of 1881 (albeit, always mindful of the *dictum* of Chief Justice MARSHALL, viz.: "Judicial power is never exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law").

In 1867, in St. Louis v. Ferry Company, 40 Mo. 580, it was ruled (quoting from one of the syllabi) that, "The personal property of a resident actually situated beyond the limits of this State, is without its jurisdiction, and cannot be assessed for taxation in this State; but the property of a non-resident is taxable here if it be found situate within the local jurisdiction, whether in the hands of the owner or his agents." The reasoning upon which that pronouncement is rested appears in the following excerpt: "In reference to taxation, personal property does not necessarily follow the domicile of the owner, nor does its liability to taxation depend upon his residence, merely, but rather upon the local situation—the *situs*—of the property. [Finley v. City of Philadelphia, 32 Penn. 381.] The property is subject to taxation in consideration of the protection which it receives from the laws of the place where it is found, and where the owner or his agent is resident."

In State ex rel. v. County Court, 47 Mo. 594, decided in 1871, it was ruled that bonds of a domestic corporation owned by a citizen of Illinois, but in this State for purposes of ancillary administration, were taxable here. That the actual situs of personal prop-

erty in the domicile of the owner determines under the law in what state it should be taxed. In reaching that conclusion the court reasoned from the premises that the right of taxing such bonds is predicated on the theory of local protection afforded the property of the owner at the actual situs of the property. Such bonds swell the wealth of the locality, are protected by its laws and should be subject to its burdens. The doctrine thus announced is rested upon the authority of approved cases in point (*Vide*, pp. 600-1). The court points out that the dogma that the situs of personal property is the domicile of its owner, is fiction, and that local color is given to its truth by the law in relation to the distribution and succession of estates.

Pausing to speak to that view of it, by way of comment we here observe that a fiction of the law is "an assumption or supposition of law that something which is or may be false is true, or that a state of facts exists which has never really taken place." [Bl., L. Dict., tit. "fiction."] Now as to legal fictions, the invariable maxim is: in the fiction there is always equity; a legal fiction is always consistent with equity (*In fictione juris, etc.*); and therewith agrees Blackstone (3 Blk., p. 43), viz.: "And these fictions of law, though at first they may startle the student, he will find upon further consideration to be highly beneficial and useful; especially as this maxim is ever invariably observed, that no fiction shall extend to work an injury; its proper operation being to prevent a mischief, or remedy an inconvenience, that might result from the general rule of law."

The premises considered we ought not, based on a mere fiction, draw a conclusion that would result in injury and wrong. If, then, there be no mandatory statute (which matter we will presently consider) making the situs of all personal property the domicile of the owner for taxing purposes, we ought not to hold that plaintiff's note, having an actual situs in Alaska,

thousands of miles from Missouri, protected only by its laws, collectible as a chose in action on due process only by courts maintained as a burden upon the taxpayers of that territory, should be assessed in Missouri as part of its taxable wealth.

In this connection the language of the Supreme Court of Kansas is apposite. In the case of Wilcox v. Ellis, 14 Kan. 602, a case in which it was sought to tax notes belonging to a resident of Kansas but which were never there, and which were secured on real estate in Illinois, it was said: "Then what is there in Kansas to be taxed? Certainly no tangible property; and not even any intangible property that needs any protection from our laws. Everything is and has been in Illinois—the consideration for the notes, the notes themselves, the place of payment, the persons to whom the notes are to be paid, and presumptively the payors, and the funds which must be used in paying the notes, all are in Illinois and have never been in Kansas. Nothing pertaining to the notes, or to the debt which they evidence, has ever been in Kansas except that the owner of the notes resides in Kansas. Every act which brought the notes or the debt into existence was performed in Illinois, and every act that may be performed in the future for their collection, payment, or extinguishment, must also be performed there. . . . Now as the State of Illinois and not Kansas must furnish the plaintiff with all the remedies that he may have for the enforcement of all his rights connected with said notes, debt, etc., it would seem more just, if said debt is to be taxed at all, that the State of Illinois and not Kansas should tax it, and that we should not resort to legal fictions to give the State of Kansas the right to tax it."

But we have been led a little to one side by way of comment. Returning now to a consideration of the state of our own revenue law at the time the Legislature enacted section 11,337 and amended 11,348,

we find that in 1879 this court decided the case of
State ex rel. v. County Court of Howard County, 69
Mo. 454. Dunnica's wife owned 22 Howard county
bonds of the value of $17,600. The Dunnicas resided
in Howard county, the bonds were issued by that
county, but they had been sent to New York merely
for safe-keeping in the vaults of a safe-deposit com-
pany, and not to avoid taxation. They were in New
York at the time of the assessment in August, 1875.
The assessor listed them as part of that county's tax-
able wealth. The board of equalization sustained that
officer. Thereat a writ of *certiorari* was sued out, but
the circuit court quashed the writ. On an appeal to
this court, we held the bonds exempt from taxation.
After discussing a case in 15 Wall. 323, and the Taylor
case and the Ferry Company case, supra, we took up
the form of the oath required of the citizen assessed.
The oath then required contained, in every essential
particular, the clause heretofore quoted from our pres-
ent section 11,351—that is, affiant was put to his oath
that he had not sent or taken any property, bills,
bonds or notes or other securities out of this State to
avoid taxation. That oath (absent a clear and specific
statute making the domicile of the owner the situs
of all his notes for local taxing purposes) was inter-
preted to mean by implication that where such prop-
erty had been sent out of this State for bona fide pur-
poses and not to avoid taxation, it is exempt.

On that opinion going down, see what followed.
At the very first session of the Legislature after the
Dunnica case was decided, it undertook to remedy a
mischief lurking in our revenue scheme and which
sprung to light by that decision. In that case the debt
was created in Missouri, was due in Missouri, the
bonds had been issued here, the debtor and creditor
both resided here, the remedies and rights of the cred-
itor were each and all vouchsafed and secured to him

237 Sup.—45

by the laws of Missouri, and yet the bonds were split from the trunk of our taxable wealth and Dunnica was relieved from the burden of paying tribute to the government thus protecting them and his rights thereto— all this by the mere incident of sending them to New York for safe-keeping from fire and thieves.

It is interesting to observe how the Legislature undertook to give a remedy and strike down that mischief. It, singularly enough, left the oath of the citizen standing in full force and vigor despite our interpretation of it in the Dunnica case. Four days later it passed an act strictly *in pari materia,* in effect, making the situs of certain intangible wealth the domicile of its owner for taxing purposes. Those two acts must be construed together and reconciled if possible. After full consideration I conclude that, so construed, they mean that the citizen should make oath he has sent none of his property away to avoid taxation (section 11,351). But if he has sent it away for that purpose, or for any other purpose, and it is ''held'' there, it is still taxable here. This, because: under section 11,337, the domicile of the owner becomes and remains the situs of such sent-away property for the purpose of local governmental tribute. Mark, the section does not say that *all* notes and bonds shall be taxable at the residence of the owner, but only those ''made taxable by the laws of this State.'' That phrase clearly points to the whole body of the revenue law and we must go to that law, to the policy of that law and to our interpretation of it to get at is meaning. Going there we see no certain assurance that the lawmaker intended to tax the intangible wealth of a resident never actually in this State.

The conclusion announced is consonant with the justice of the thing. It makes property, situated as was the Dunnica bonds, taxable at the residence of the owner in Missouri, thereby discerning the mischief disclosed by that case and providing a remedy. It

makes outside intangible property, never in Missouri, therefore never sent away, non-taxable here. It preserves intact the philosophy of taxation, which is that the *protection* of the law of the locality gives the right to tax the property, and that where that protection in nowise exists the right to tax fails.

While the exposition of our revenue laws, in the particulars now up, is not without great difficulty, yet we have been unable to discover any disposition on the part of the Legislature to send all the prior learning in this State on the question in hand to the dust-heap, and wholly alter a public policy long existing. It will be time enough to tax the intangible wealth of our residents in Timbuktu, Pekin or Alaska, and never within our territorial boundaries, when the lawmaker says so in words admitting of no other construction.

It results that plaintiff was entitled to full relief.

Apposite to the conclusion reached, and apparently much fortifying it, is the reasoning of two late cases. Mindful of the *mot* of Bacon that fresh justice is ever the sweetest and confessing a doubt on the soundness of my own interpretation, springing from the fact that our revenue statutes hold discordant provisions and need careful and scientific revision, I may be allowed to quote from and comment liberally on those cases.

In State ex rel. v. Brinkop, President of the Board of Assessors, and Koeln, collector (a case in Banc, not yet reported), certain items were added to the assessment list of the American Cent. Ins. Co., a home corporation, in order to ascertain the value of its capital stock for taxing purposes. Among them was one of $328,696.38 representing premiums due on policies outside of this State and payable outside the State; another was a bank deposit kept by the insurance company in a bank outside this State, in good faith, with no intention of avoiding the taxation thereof in Missouri. One of the questions in the Brinkop case was

the validity of those forced additions to such list.  It will be illuminating to note the views of this court in Banc in so late a case on the disposition of those items.

There is a legal maxim:  "Movables follow the person" (*Mobilia sequuntur personam*).  That maxim is sometimes loosely expressed in the phrase, the situs of personal property is the domicile of the owner. Broom (Br., Leg. Max., 8 Ed., p. 399) deals with that maxim as one of the rules relating (not to taxation, but) to the descent and distribution of property. Thereto Story agrees. [St., Conf. of L. (8 Ed.), sec. 379, and ante.]

In this the Brinkop case agrees, witness: "*Mobilia sequuntur personam* is a maxim of international law and is applied chiefly, if not exclusively, to the distribution of an intestate's estate; it has never been applied in this State to the requiring of a resident to list for taxation personal property owned by him located in another State, not because the property is liable to taxation in the other State, but because it is not liable to taxation in this State.  If the property were liable to taxation here and if the State should see fit to tax it, the taxation here would not be double taxation in the sense that we have above used that term, because this State is not chargeable with the consequences of taxes levied in another State. Since therefore the property located in another State is not directly taxable here, or at least is not included in the property rendered liable to taxation by our statutes, the question arises, was it the intention of our Legislature to levy indirectly a tax on it in the guise of taxing the shares of stock in the corporation which owns the property?"

Observe, the Brinkop case deals with taxing corporations and while there are some peculiarities in the method of assessing and taxing corporations, yet it is pointed out therein that the principle of uniform-

ity in taxing the property of individuals and corporations is maintained in our statutes, and it will be seen that the Brinkop case proceeds on the theory that our statutes do *not* require individuals to list debts due them in another State. On that point the case speaks in no uncertain voice. It says the corporation must be dealt with as fairly as the individual, and since he pays no tax on outside property the corporation stands acquit. Therewith accord the following excerpts: "But would they [corporations] in such case be required to include in their return property not in this State? If so, then an individual would be required to do the same, for the language above quoted from section 11,415 is not limited to corporations, but applies to individuals as well, and besides, section 7098, Revised Statutes 1909, in reference to insurance companies requires that their property 'shall be assessed and taxed as the property of individuals.' . . . And it would also be unwise and unjust discrimination to make corporations pay taxes, either directly or indirectly, on their property outside the State when individuals are not so required. Missouri has within its own borders vast wealth in property on which the tax collector can lay his hands and it has no occasion to reach out and gather taxes on property which is not under its protection. To take into account, in assessing the value of the shares of stock in this insurance company, property owned by the corporation outside of this State, would be equivalent in effect to requiring the shareholders to pay taxes on such property; our statutes do not authorize such taxation. We hold that the bank deposits and accruing premiums outside this State mentioned in relators' petition are not to be taken into account in assessing the value of the shares of stock. What we have said in this connection is intended to apply to the facts of this case wherein it is admitted that the corpora-

tion has acted in good faith and has not put any of its property outside this State to avoid taxation.''

So, in the late case of State ex rel. v. Lesser (in Banc and reported in 237 Mo. 310), our present revenue statutes were reviewed in the light of former statutes. In that case it was said: ''The sovereign power of the State to require its citizens to pay taxes on all their personal property, or on what they own representing their interests in personal property, within or without the State, may, for the purposes of this case, be conceded. But conceding that the State has the power to tax such interests it does not follow that such interests are taxed unless the law so declares. It is not left to the tax assessor or tax collector to say what property or what interests in property are to be taxed.''

Referring to section 11,348 of our present statutes, relating to the list to be furnished the taxpayer by the assessor, we said this in the Lesser case: ''Section 11,348 requires the assessor to furnish the person to be assessed a printed or written blank, prepared for that purpose, containing a list of all the kinds of personal property that he is to return for taxation. The statute has carefully enumerated all things on which the tax is to be levied, and the list is designed to be so explicit that every taxpayer may understand what is required of him. The taxpayer is required to fill out the blank showing how much if any of each item specified he owns, and the list so made out is to be signed and sworn to by him. and if it is false he is liable to the pains and penalties of perjury. No one can read that section of the statute without being impressed with the thought that it was the purpose of the lawmaker to make the duty of the taxpayer in rendering his list for taxation so plain that one could neither honestly escape making a list of all his property called for, or be unconsciously led into making a false return and a false oath.''

Speaking to section 11,519, Revised Statutes 1909, which defines property and personal property in a comprehensive way, we said this in the Lesser case: "If the General Assembly had intended by that definition to say that the taxpayer should list for taxation not only his property in this State, including the items specified in section 11,348, but also every thing else on the face of the earth in which he had any interest, either within or without the State, it would require him to list not only the personal property, but also the real estate outside the State, which he might own or have an interest in. The reasonable construction of that clause of the statute is that it was intended to mean property in this State. That intention also appears in the definition in that section given the term 'personal property.' The definition is very comprehensive, and specifies stocks and bonds and many other things tangible and intangible, but it nowhere says of any of the items mentioned that they are included whether in this State or elsewhere, until it comes to 'ships, vessels, or other boats,' and of them it says, whether 'within the jurisdiction of this State or elsewhere.' If it was intended to mean that all the personal property enumerated or interest therein, here or elsewhere, was included, why did it specify boats here or elsewhere? The distinction in this particular drawn between steamboats and other properties shows that the Legislature intended, except as to steamboats, etc., to include only property or interests within this State.

"Appellant refers also to section 11,334, Revised Statutes 1909: 'For the support of the government of the State, the payment of the public debt, and the advancement of the public interest, taxes shall be levied on all property, real and personal, except as stated in the next section.' The next section relates only to property exempt from taxation by the Constitution. Here again we have the general term 'all property,

real and personal,' and there is in that section no more authority for saying that it includes personal property outside of the State than that it includes real estate beyond our borders; if it includes one it includes both.''

Again, further along we said: ''This State has always maintained a high standard of public policy and has never attempted to reach beyond its borders to gather revenue from property not under its protection.''

Referring to the list furnished by the assessor (Sec. 11,348) and to the oath required to that list (Sec. 11,350), we said this: ''The plan of giving the taxpayer no specifications to guide him in making out his list to be returned to the assessor, which was adopted in 1866, after being tested for ten years or more, was found to be unsatisfactory, at least it is to be so inferred, because in 1877 the General Assembly abandoned that plan and adopted the plan now in use furnishing the taxpayer with a full list of items to guide him in making his return under oath and under penalties, and if we should now construe the law to be that he was not only required to make his return of the items specified on that list, but also to go to section 11,519 and figure out if he could, or at his peril if he could not, what else was required to be listed under the broad definition of property and personal property in that section given, we are satisfied we should do violence to the meaning of the statute.''

It is thus put beyond all question that the reasoning of the Brinkop and Lesser cases is that a corporation is not required by our statutes to pay taxes on its evidences of debt outside this State, *because the individual is not so required.* For us to now hold the individual is so required is to explode the assumption on which the reasoning of those cases rests—it is to plow up the very foundation of those cases.

Moreover, the yoke of taxation should rest evenly on the necks of all residents—those natural persons having bodies and souls and those artificial entities having neither. Hence we are loth to write the law to be that in Missouri the man pays taxes on his outside choses in action, whilst the domestic corporation stands acquit. Why should we do so unseemly and unjust a thing?

The judgment is reversed and the cause remanded with directions that the full relief prayed for in plaintiff's bill be decreed him. All concur.