THE STATE ex rel. WILLIAM H. HICKMAN, Collector of the Revenue of Morgan Township, Appellant, v. ROBERT W. LEWIS et al., Administrators of Estate of WILLIAM LEWIS.

**Division Two, March 24, 1914.**

1. **ABSTRACT: Index.** Where the abstract filed in proper time in the Supreme Court contains a proper index, the appeal will not be dismissed for that the copy of the abstract served on appellant contained no index. The rule requiring an abstract to contain an index (Rule 13) is largely, if not entirely, for the benefit of the court, and not for the benefit of opposing counsel.

2. **APPEAL: Timely Filing: Misprint of Date in Abstract.** Where the file mark of the clerk shows that the certified copy of the judgment and order of appeal was filed in his office within the time prescribed by the statute, the appeal will not be dismissed because of a typographical error in the printed abstract reciting that it was recorded one year later than the actual date.

3. **SCHOOL TAXES: Nonresident Decedent: Uniformity: Constitutional Statute.** The constitutional requirement for uniformity of taxation "upon the same class of subjects within the territorial limits of the authority levying the same" makes it impossible to make a valid levy of taxes for school purposes upon the notes owned by a nonresident decedent, for a lack of a place to apply such taxes, for he never resided in any one district in the county; and if Sec. 11355, R. S. 1909, applies to such a situation, it would be unconstitutional.

4. TAXES: Mortgage Notes of Nonresident Decedent. Notes owned by nonresident decedents, in their possession at the time of their death in other states, although their payment is secured by mortgages on real estate in this State, are not taxable in this State. Neither the domicile of the owner nor the *situs* of the notes is in such case in this State.

5. ———: ———: Situs of Debtor: Statute. Sec. 11,355, R. S. 1909, applies, as it now reads, since the amendment of 1903, to the taxation of personal property of a deceased person in the state, county and school district in which such person resided in his lifetime, and not elsewhere. It does not make the domicile of the debtor the *situs* of the mortgage note.

6. TAX SUIT: Costs: Township Collector. A judgment for costs in a tax suit against a collector, whether city, county or township collector, or against the State, county or city, is forbidden by Sec. 11,487, R. S. 1909.

Appeal from Mercer Circuit Court.—*Hon. George W. Wanamaker, Judge.*

REVERSED AND REMANDED (*with directions*).

*R. W. Steckman* and *A. G. Knight* for appellants.

(1) By plain statutory provision, this property was made taxable in Mercer county, Missouri. Sec. 11355, R. S. 1909. The property in the hands of the administrators being unquestionably taxable in Mercer county, and the property consisting of notes secured by mortgages on real estate scattered over the county, and Mercer county being under township organization, and there being no *situs* in any township of said county, the question arises, "In what township is such property assessable?" We contend that in the absence of a showing of an actual *situs*, by clear inference, if not by the definite terms of the above statute, the records of the probate court, which stand in the place of the property, and from which it is ascertained and determined, establishes a legal *situs* for said property, and furnishes the basis for assessment and taxation in the township of such court and record. State ex rel. v. McCausland, 154 Mo. 190. While the

residences of the administrators were not in Mercer county, but respondent, Joe Mills, resided in Putnam county, and respondent, Robert W. Lewis, resided in Sullivan county, yet they had an actual residence for the purpose of this case in Mercer county. Gallup v. Schmidt, 54 N. E. (Ind.) 384, 56 N. E. 443, 183 U. S. 300; Comm. v. Peebles, 134 Ky. 121; Alexander v. Versailles, 153 S. W. 455; 37 Cyc. 807. Again, our contention that the jurisdiction of the probate court fixes the situs of the property being administered upon, is upheld by decisions elsewhere. Baldwin v. Commissioners, 36 Atl. (Md.), 764. These statutes being in aid of the revenue, should be liberally construed. These administrators appeared before the Board of Equalization of Mercer County, filed pleadings and had a hearing of their cause, and had the assessment reduced from $275,000 as fixed by the assessor, to $266,500 as fixed by the board of equalization. They had full knowledge that the taxes were due, although acting in a fiduciary capacity, with ample funds in their hands to pay the same, and although their decedent had failed to pay the State of Missouri her taxes for nearly 20 years, on approximately a half million dollars; and although the law commanded such fiduciaries to pay the taxes, they refused to do so. Hence, they are entitled to no indulgence in the interpretation of these statutes. Gallup v. Schmidt, 56 N. E. 443. (2) The administrators and their attorneys appeared before the board of equalization, at a time and place fixed by such board, where they could be heard, and for the purpose of being heard; and upon due notice to such administrators, and at such hearing, the administrators, through their attorneys, asserted the invalidity and illegality of the Ravanna township assessment, and by the plainest principles of estoppel, they cannot now be heard to urge Ravanna township as the *situs* of this property, or as the township to which they should have paid their taxes. 16 Cyc. 785,

796.   And, being a party to such proceedings and to having the assessment of Morgan township's assessor reduced from $275,000 to $266,500 by the board of equalization for equally cogent reasons, and on the same authorities, the respondents are estopped from asserting any invalidity to the Morgan township assessment, if none such had even been made. In re Sanford, 236 Mo. 687; State ex rel. Wyatt v. Vaile, 122 Mo. 33; Black v. McGonigle, 103 Mo. 192; Bldg. & Sav. Assn. v. Lightner, 47 Mo. 393; State ex rel. v. Springer, 134 Mo. 212; State ex rel. v. Harrison, 226 Mo. 158.

*E. M. Harber, Ira B. Hyde, A. M. Hyde* and *E. R. Sheetz* for respondents.

(1)   There is no index to abstract in these cases as required by rule 13, hence appeals should be dismissed. Garrett v. Mining Co., 111 Mo. 299. (2) The only manner by which this property is claimed to be assessed by city of Princeton was by Grant Duble, then city assessor, going to probate records, and finding property there inventoried to Lewis & Mills, ancillary administrators of Dr. William Lewis, of nearly $500,000, proceeding to attempt assessment thereof at 55c on the dollar, $275,000. This was not a legal assessment. Warrensburg v. Miller, 77 Mo. 56; Mexico v. Cauthorn, 25 Mo. App. 285. (3) .The property was not from any point of view under the record and undisputed facts shown thereby, subject to taxation by the city of Princeton or Morgan township. There is no claim that either William Lewis, his brother, Dr. Frank Lewis, domiciliary administrator, or Robert W. Lewis or Joseph Mills, ancillary administrators, ever resided in said city or township or that said property was ever therein, or any business by or for the doctor was transacted therein. Neither the city of Princeton nor Morgan township had any authority to tax any

property not having an actual situs therein, the law giving such city, Sec. 9347, R. S. 1909, the right to assess property specifically says: "Assess all property in such cities." Corn v. Cameron, 19 Mo. App. 573; State ex rel. v. Timbrook, 145 Mo. App. 368; Plattsburg v. Clay, 67 Mo. App. 497; Wilkey v. Pekin, 19 Ill. 159; Dunleith v. Reynolds, 53 Ill. 45. The attempt, if such was made, by the Legislature, would meet with unanswerable constitutional objection. Wells v. Weston, 22 Mo. 384; R. S. 1909, secs. 11719, 11726, 11729, 11743. (4) The revenue laws do not contemplate the assessment of this property. Leavell v. Blades, 237 Mo. 706; Sec. 11355, R. S. 1909; Valle v. Zeigler, 84 Mo. 214; State ex rel. v. County Court, 69 Mo. 454. (5) The situs of promissory notes for taxation is that of the owner at the time of his death, and the removal of said notes elsewhere by personal representatives does not change that situs. State ex rel. v. Timbrook, 145 Mo. App. 368; Stephens v. Boonville, 34 Mo. 323; State ex rel. v. McCausland, 154 Mo. 190; 25 Am. & Eng. Ency. Law (1 Ed.), 146, 147; Board v. Hewitt, 14 L. R. A. (N. S.) 493. (6) The situs of a note held in a foreign state is not affected by the fact that it is secured by mortgage or deed of trust in this state. 25 Am. & Eng. Ency. (1 Ed.), 149; 16 L. R. A. 730, and notes; Comm. v. Railroad, 29 Pa. 370; State Tax on Foreign-held Bonds, 15 Wall. (U. S.) 300; Myers v. Seoberger, 45 Ohio St. 232; 37 Cyc. 801; Borden's Appeal, 208 Ill. 369; Foresman v. Byrus, 68 Ind. 247; Herron v. Keeran, 59 Ind. 472.

FARIS, J.—This is an action brought by the State at the relation of the collector of Morgan township in Mercer county, Missouri, for state, county, school and township taxes. The defendants are the administrators of the estate of one William Lewis, deceased. The judgment of the court below was for the

defendants; whereupon plaintiff collector appealed to this court.

Mercer county, it is agreed, has adopted and was during the time of this suit operating under the statutes governing counties under township organization. William Lewis, whose estate it is here sought to charge with the taxes mentioned, was in his lifetime and for forty years or more prior to his death, a citizen and resident of the city of Little Rock in the State of Arkansas. Said Lewis died on January 19, 1908, the owner and holder of divers promissory notes, aggregating almost the sum of five hundred thousand dollars, secured by mortgages and deeds of trust upon real estate situate in Mercer, Sullivan, Grundy and Putnam counties, Missouri, and in the State of Iowa. Some two-thirds or three-fourths of the amount of property sought here to be charged with taxes is represented by money evidenced by said notes and loaned upon real estate in Mercer county. Shortly after the death of William Lewis, his brother, Francis M. Lewis of Little Rock, was appointed by the probate court of Pulaski county, Arkansas, as his domiciliary administrator. The notes in question and which now represent the property sought to be charged with taxes, were, at the time of said William Lewis's death, in his possession in Little Rock, Arkansas. The domiciliary administrator, Francis M. Lewis, took charge of these notes and held them until Robert M. Lewis and Joe Mills, defendants herein, were appointed ancillary administrators of said estate by the probate court of Mercer county, which appointment was made on February 10, 1908. It may be here stated, as of possible pertinence hereafter, that defendant Robert M. Lewis resides in Sullivan county, Missouri, and defendant Joe Mills resides in Putnam county, Missouri, though the administration was begun in Mercer county, inferably because a majority of the debtors reside in that county.

Shortly after the appointment of defendants as administrators of the estate of William Lewis, they went personally to Little Rock and there obtained from Francis M. Lewis, the domiciliary administrator, the notes in question, gave said Lewis their receipts therefor and brought these notes to Missouri.

Thereafter they filed an inventory in the office of the judge of the probate court, which showed an invoice of personal property amounting to $491,578.62, all of which (except it may be an indefinite and negligible value) was represented by said notes secured by mortgages and deeds of trust upon real property situate in the counties above mentioned. The Mercer County Board of Equalization, in a long order containing many findings, divers of which were utterly at variance with the conceded facts, at first fixed the situs of this property for taxation in Ravanna, Ravanna township, in said county, for the reason, as appears in a premise of the order, that one Mastin, deceased, residing while alive in the latter town and township, was engaged therein in lending out and collecting money for William Lewis in the lifetime of the latter. Later, and before this action was begun, the above order was revoked and an order made which recited that the situs of this property for the purposes of taxation is Morgan township. The Morgan township assessor, one Grant Duble, who is also the city collector of the city of Princeton, which is a city of the fourth-class, finding this inventory and invoice of the property of this estate set down upon the probate records of Mercer county, proceeded to assess the same at fifty-five per cent of its face value, and therefore in the sum of $275,770, for the purposes of taxation. The latter amount was by the order of the Board of Equalization subsequently reduced to two hundred and sixty-six thousand five hundred dollars valuation, upon which latter valuation state, county, school and township taxes were levied and extended, in an amount, includ-

ing a small accrued penalty, of $5,116.80, for which, plus a ten per cent attorney fee, and amounting in all to $5781.90, this action was begun in the probate court of Mercer county. The probate court found in favor of plaintiff for the full sum demanded. An appeal was taken to the circuit court, which court found in favor of defendants. Thereupon this appeal was taken by the collector.

Coming to us with this case is the companion case of State ex rel. Duble, as collector of the revenue for the City of Princeton, against Robert W. Lewis and Joe Mills, administrators of the Estate of William Lewis, deceased. [*Post,* p. 121.] The facts in the latter case (except that the suit is for taxes alleged to be collectible for the use and benefit of the city of Princeton and is for the sum of $5383.50, which includes accrued penalty, but which does not include collector's fees or attorney's fees) are in all respects like the one before us, and by agreement of counsel the cases were briefed here and are to be considered together. They will be so dealt with in our opinion, except for a slight difference hereafter specifically to be noticed when we come to a consideration of the latter case.

The concrete point before us and the controlling question here is, regardless of certain other issues, in their nature somewhat technical, whether intangible property, that is to say debts, belonging to the estate of a foreign decedent and in course of ancillary administration for the sole purpose of collection and transmission to the domiciliary administrator, is liable to be taxed for state, county, school and township taxes under the provisions of section 11355. This point is controlling; the others are merely incidental. For a consideration of this point the facts above noted are deemed sufficient. Should they fall short of the requisite clarity other facts will be noticed in the subjoined opinion.

I.   There are presented to us *in limine,* by learned counsel for respondents, certain questions which, they urge with some insistence, preclude an examination of the case upon its merits.   These are:  (a) that there is no index to the appellant's abstract of the record, as required by Rule 13 of this court; (b) that since appellant's abstract shows that this appeal was taken in December, 1910, and not filed here till January, 1912, it should be dismissed.

*Abstract.*

Touching the contention first noted, we find that the abstract of record on file with us contains a sufficient printed index.   The explanation is urged by appellant that while the copy of the abstract of the record served on defendants did not contain an index, the abstract filed here did contain a sufficient one. Finding this upon examination to be true, we disallow the point, since the main object sought to be attained by this rule is to have such index to a record as will facilitate our examination of the pleadings, points, motions, rulings and evidence in the case.   Till a cause is argued and submitted we rarely ever hear of it, and are utter strangers to the contents of the record thereof.   The requirement of an index is largely, if not entirely, for our benefit and not for the benefit of opposing counsel, since they, we are privileged to assume, are familiar with the case and its every detail, without the necessity of a reference to the record, *via* an index or otherwise.   Ought we then, no other attack being made and no other relief being sought, to dismiss this case because the copy of the abstract of the record served on respondents has no index, when those filed with us, in time, we assume, naught else appearing, are properly indexed?   We think not.

Giving heed to the point (b) made by respondents, that since appellant's abstract shows the filing of a short-form appeal here some year or more after the appeal was granted, we ought to dismiss the appeal for failure of appellant to comply with section

2047 of our statute, which makes all appeals taken sixty days before the next term of this court returnable to such next term, and to be lodged here at least fifteen days before the first day of such term. If the record . agreed with appellant's abstract and if the facts were as respondents contend, then we ought, other things (timely motion suggesting the default, lack of excuse, etc.) being equal, to dismiss this appeal. We find that appellants have inadvertently, by clerical mistake or by a slip of the type, stated in their printed abstract that this appeal was filed here in January, 1912. If respondents' contention were literally true we should, without further, dismiss this appeal. But as Jupiter, as was conceded by his admirers and the members of his church, nodded on occasions, so· have appellants by inadvertence, made an error against themselves. For the original short-form appeal now before us, which as a paper in the record we judicially notice, appears from the file mark of our clerk to have been filed here on the 25th day of March, 1911, which was seventeen days before the first day of the April term, 1911, of this court, and in time. So we disallow this point and come to the controlling question in the case.

II.  This question is upon facts which are undisputed: Is the intangible personal property of an intestate non-resident decedent, appearing upon the records of the probate court, and in the hands of ancillary administrators for convenience of collection, liable for state, county, school and township taxes under the provisions of section 11355 of our statutes? In stating the question we pretermit two points urged by respondents as important, if not controlling. These are (1) that the defendants, the ancillary administrators, do not reside either in the city of Princeton, or the township of Mor-

**Taxation:**
**Mortgage Notes of Non-Resident Decedent.**

gan, or the county of Mercer, but that one of them resides in Sullivan county and the other in Putnam county, and (2) that the township of Morgan cannot tax this estate for township taxes. But the question mooted renders necessary a consideration of how far the physical presence in the State of notes and mortgages—which in view of the present trend of thought and of latter-day business, may well be denominated quasi-tangible property—would under a valid statute affect the taxability of such evidence of debt when owned by non-residents, or their estates.

We do not think that we need to reach, or that we will reach, the first point omitted as an element of the question before us; for the reason that the discussion ought to be broad enough to so comprehend this point as that it will make no difference in the rule announced whether we include it specifically or not. On the point of the right to tax this fund for township taxes and purposes, likewise left out presently from the concrete question as we state it *supra,* it will suffice to say, that the case ought not to turn on so narrow a view. This view would save less than one-fifteenth of the whole amount of taxes here in controversy and render a victory on this point alone flat and unprofitable. This for the reason that the township collector is here trying to collect state, county, school and township taxes under the statutory scheme provided for a county which has adopted township organization. The collector here stands broadly upon the right to charge this fund with state, county, school *and* township taxes.

It is patently one argument, and so far as it goes a strong argument, against the right to collect at all, that is as against even the *right to collect state, or county, or school taxes,* to urge the almost self-evident proposition that the mere adventitious facts that the county seat of Mercer county is in the city of Princeton, that the city of Princeton is situate in Morgan township and that the records of the probate court are

lodged there, does not confer upon the city of Prince-
ton and the township of Morgan the so great advan-
tage over the city of Modena and the city of Goshen,
or the town of Mercer or Watoga and over the town-
ships in which the last mentioned cities and towns of
Mercer county are happily, but unfortuitously located,
as that Princeton and Morgan township may respect-
ively for their own proper use and benefit, tax this
estate in the sums respectively of five thousand dol-
lars plus, and six hundred dollars plus. As forecast,
the very statement of this insistence thus baldly made
proves to the least logical mind its own refutation. It
might, and we think it does, dispose effectually of the
claim of taxes due to the city of Princeton and to the
small proportion claimed as specially accruing for
township uses to Morgan township, as well as the mat-
ter of school taxes, but it is too constricted to settle
the broad question here to be met, as to whether the
State of Missouri and the county of Mercer have not
by means of the taxing machinery in use in Mercer
county the right to thus levy taxes upon this fund. In
short, while the point urged is strongly argumentative,
it is not wholly decisive of all of the case.

It is contended by appellants, and on this conten-
tion they bottom their whole case, that section 11355,
Revised Statutes 1909, fully covers the facts and gives
ample authority to tax the property of this estate for
all purposes here urged. If this be true, if this sec-
tion does include as taxable an estate and a fund of the
sort in question here, the learned judge *nisi* was in
error and we must reverse this case. This section is
as follows:

"It shall be the duty of every judge of the probate
court in each county in this State to certify to the
county assessor, on the first Monday of June in every
year, a written list of every administrator, executor
and guardian, and of every other person legally in
charge and control of any estate in the probate court;

and thereafter, and upon such certification, it shall be the duty of the county assessor to take from each administrator, executor, guardian, and every other person legally in charge and control of any estate in such probate court, or from the papers and records of the court relating to such estate, a list of personal property, and to assess the same according to law—such property hereby being declared to be subject to taxation in said county for all lawful purposes whatsoever, so long as the probate court thereof retains jurisdiction of such estate; and for public school purposes, the personalty of the estate in charge of any such administrator, executor, guardian or other person aforesaid, shall be taxable by and for the benefit of the school districts of such county, as follows:    The personalty of an estate of a deceased person shall be taxable by and for the school district in such county in which the decedent resided at the date of his death; and the personalty of an estate in charge of a guardian or other person aforesaid shall be taxable by and for the school district in such county, in which the ward or owner resides, on the first day of June of the year in which the assessment is made, if such ward or owner resides in such county, and if not, then by and for the district in such county in which the property was located at the date of the appointment of such guardian or other person.''

In the view we are constrained to take of this case the construction urged by learned counsel for appellants would probably render the above section invalid under that provision of our Constitution which requires taxes to be uniform upon the same class of subjects within the territorial limits of the authority which makes the levy.    This provision reads thus:

''Taxes may be levied and collected for public purposes only.    They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and all taxes shall be levied and col-

lected by general laws." [Sec. 3, art. 10, Constitu-
tion.]

There was no such provision in the Constitution
of 1865, and while the first sentence of the above sec-
tion has been said to have been the law before the
adoption of our Constitution (State ex rel. v. St. Louis,
216 Mo. 1. c. 90,) this is not true as to the requirement
of uniformity as contained in the last sentence there-
of. So much is said because we are cited to the opin-
ion of Judge BLISS in the case of State ex rel. v. St.
Louis County Court, 47 Mo. 594, as authority for tax-
ing intangible property, that is a debt, at the tempo-
rary physical *situs* of the evidence of the debt, where
the former owner was dead, but had been before death
a resident of a foreign state and dying possessed of
certain debts, owed in this State, ancillary administra-
tion was had here to collect such debts; all as here in
the case at bar. However, the reason on which Judge
BLISS based his holding in the above case would inevi-
tably result, if strictly adhered to here, in a finding
for respondents. Because, he held that the funds were
taxable at the domicile of the ancillary administrator,
and on a further ground, at least *arguendo,* that the
funds themselves were physically present at the place
where it was sought to tax them. Since neither Lewis
nor Mills, the ancillary administrators, resides in Mer-
cer county, and since, at least by strong inference, the
notes are not physically in Mercer county, or in either
Morgan township, or the city of Princeton, the holding
in State ex rel. v. St. Louis County Court, supra, does
not help appellants. An adherence to its strict letter
would inevitably result in their undoing.

But there is for this view a stronger reason, aris-
ing from the Constitution. The case supra was de-
cided in 1871, before the last clause of section 3, supra,
of the Constitution was adopted as a part of the or-
ganic law. A bare glance at the facts in the instant
case will disclose, if appellant's contentions are ten-

able, that there can be no such uniformity of taxation in Mercer county ''upon the same class of subjects,'' as this section of the Constitution requires. The *subject* of taxation in hand is the estates of dead men. Will the estate of William Lewis, deceased, late of Little Rock, Arkansas, be taxed uniformly with that of John Doe, deceased, late of Ravanna township, and county of Mercer, or that of Richard Roe, deceased, late of Madison township, county of Mercer. Clearly not, for the reason that in the matter of school taxes when we come to give full force and effect to the section of the statute under review in the light of the constitutional limitation, we find that while the statute provides a fixed, definite and logical place to apply the school taxes of John Doe, deceased, and Richard Roe, deceased, to-wit, the identical school districts in Ravanna township and Madison township, respectively, ''in which the decedent resided at the date of his death,'' no such school district can be found where any logical application of the school taxes accruing from the estate of William Lewis, deceased, can be made in accordance with the expressed intent and purpose of section 11355. Manifestly neither the Constitution nor the lawmakers had in mind that the mere accident of the location of the county seat of Mercer county in Morgan township and in the city of Princeton would confer upon such township or city or upon a school district in such city or township, an advantage over all other cities, towns, townships and school districts of the county, so lacking in uniformity. Then if there be no school district entitled to take this school tax, such tax cannot be collected at all from William Lewis's estate, though it can be collected from other estates, and thus will the provision of our Constitution enjoining uniformity of taxation be violated., If we look further along in the section we note that it is provided that in case personal property taxable under this section belongs to a ward or owner who does not

reside in the county in question, then the personal property taxable under this section shall be taxed for the benefit of the school district in which the property was located at the date of the appointment of the guardian.

But section 11337 specifically provides that "all personal property of whatever nature and character, situate in a county other than the one in which the owner resides, shall be assessed in the county where the owner resides, except as otherwise provided by section 11355." We are cited to the case of State ex rel. v. McCausland, 154 Mo. 185, but since this case was decided in 1900, both sections 11337 and 11355 were amended in 1903, in such wise as, and inferably with the intention, to change the rule announced by the above decision, and there is therefore little of logical or legal consolation derivable from its holdings. We must have recourse to these sections themselves as they have stood since the amendment of 1903 (Laws 1903, pp. 255 et seq.), and observe whether we are able to square their provisions with the constitutional limitation above set out as also with the facts here. Unless this can be done this fund is not taxable in Mercer county.

It will be kept in mind that the property here sought to be taxed consists wholly—except perhaps an indefinite and negligible part—of choses in action, i. e., debts due the estate of William Lewis, evidenced by promissory notes, which notes are secured by mortgages. The *situs* of these debts, or, at least the domiciles of those who owe them, are scattered over Grundy, Sullivan, Putnam and Mercer counties—some of them are owed in Iowa. One of the administrators resides in Putnam county and the other in Sullivan county. The ancillary administration was commenced in Mercer county, where some three-fourths of the debtors of this estate resided. The suggestion is made in

the briefs of learned counsel for appellant by way of
a compelling argumentative equity, that the estate of
Lewis and its administrators ought not in good con-
science to move bodily into Mercer county and use
as their own the legal machinery thereof at the great
cost of the taxpayers, and then resist the re-payment
by way of taxes of some part of the charges they have
thus fastened upon this county. Some such idea may
have been in the legislative mind when these sections
were enacted. But a general answer is that the same
thing is done daily. Foreign creditors forward for col-
lection claims against citizens of this State and our
courts are used both to prosecute and defend actions
bottomed upon them. Similarly our citizens use the
courts of other counties in other states for like pur-
poses. If we could so thrust aside comity and while
thus levying tribute upon those who owe us and while
using the legal machinery of other counties in foreign
states to enforce our claims, forbid such use of our
own courts, or tax foreign claimants prohibitively for
such use of them, we should become a very comfortable
people and a rich—if our credit kept good. Besides,
it is urged in answer, that this administration here
had is for the benefit of the debtors rather than for the
benefit of the estate; that since the debts are secured
by mortgages upon real estate, there is lacking an au-
thorized person to acknowledge satisfaction and to re-
lease the lien on the land upon the deed record when
a payment is made; that there is doubt whether the
foreign domiciliary administrator can legally acknowl-
edge satisfaction, and that while the estate can be
fairly well protected by a sale of the property under
the powers of sale in the mortgages, such sale would
entail costs upon those of the debtors who reside in
Mercer county. Pretermitting then the obtruding but
unthinkable suspicion that the citizens of Mercer coun-
ty who owe these debts are perfectly willing to be let
alone, we see that in law the benefits of this adminis-

tration accrue to the citizens of Mercer county as well as to the ancillary administrators. Some of them for aught we know, may be suable in the Federal courts, thus conferring a favor upon the defendants in such actions, if an action arise, in localizing the forum.

But whatever the intention of the Legislature may have been, if they had in mind subjecting to taxation a fund which has its situs in a county transitorily and in a large sense by a mere fiction, we are forced to conclude that by a failure of proper provisions in the section in discussion, they have failed to effectuate that intention and that section 11355, if it mean what appellants contend, would be constitutionally invalid. We concede that the State through the Legislature has the power to tax the property of the estate of a decedent in process of ancillary administration in our courts when represented by tangible property, or by quasi-tangible property as bonds, mortgages and other securities physically present in this State. [Leavell v. Blades, 237 Mo. 695; Judson on Taxation, 394; St. Louis v. Ferry Co., 40 Mo. 580; New Orleans v. Stempel, 175 U. S. 1. c. 313; Bristol v. Washington County, 177 U. S. 133.] But such taxation must be levied uniformly, so as not to run counter to the above quoted language of our Constitution. Under the provisions of this section, since the decedent never lived in any school district of Mercer county, no taxes could be validly levied for school purposes upon the property of the estate of William Lewis for lack of a place to apply such taxes. But taxes in the supposed case *could be levied* upon the property of the estates of John Doe or Richard Roe.

It is true that this section provides further that if the owner of an estate in the hands of a guardian *or other person* does not reside in the county in which the property is sought to be taxed, the taxes levied for school purposes shall go to the school district in which the property was located at the date of the appoint-

ment of "such guardian or other person." If *other person,* as here used, means an administrator, such as defendants are. (but we think it does not), the record shows that both of them lived in counties other than Mercer at the date of their appointment. If these defendants are the *owners* of this property within this section's meaning, then they are not taxable in Mercer county, for they live in Putnam and Sullivan counties. If William Lewis is *the owner meant,* he lived and died in Little Rock, Arkansas. If his heirs are *the owners referred to,* they are scattered over half a dozen states and counties, and but three-thirtieths of them reside in Mercer county. If these notes which represent the property here sought to be taxed have such tangible character as to constitute the property held in mind by the language of the statute, then the proof shows that "at the date of the appointment of such guardian" these notes were physically in Little Rock, Arkansas, and there remained till twelve days after defendants were appointed. If the domiciles of the debtors is the *situs* of the property for the purpose of taxation, then we are aided not at all, for an indefinite number only of these debtors are located in Mercer, some are in Iowa, some in Grundy, Sullivan and Putnam counties.

The lack of power in a State to tax intangible property as debts owed by a citizen of the State to a nonresident, as compared to the power in such State to tax quasi-tangible property, as bonds, notes, mortgages and other securities which evidence debts due by, or liens upon the property of citizens, due to or held by non-residents, when such evidences are physically present in the taxing State, is well and carefully set out and distinguished in the case of Liverpool, etc., Ins. Co. v. Board of Assessors, 44 La. Ann. 760, where it is said:

"We are dealing exclusively with the question of credits as assessed, and we hold as decided in 41 La.

Ann. 645, 1015, 'that debts have their situs at the domi-cil of the creditor,' because debts are property and have a value, which is inseparable from the creditor, and because the State has no greater power or juris-diction to tax debts due to non-resident creditors than it has to tax any other personal property of such non-residents which is not situated in the State.''

And in the case of Railey v. Board of Assessors, 44 La. Ann. l. c. 770, where it was said:

"There is no doubt of the legislative power to modify the rule of comity, *mobilia personam sequun-tur*, in many respects.   Movables having an actual *situs* in the State may be taxed there, though the owner be domiciled elsewhere.   Even debts may assume such .concrete form in the evidences thereof that they may be similarly subjected when such evidences are situated in the State, as in the case of bank notes, public securi-ties, and, possibly, of negotiable promissory notes, bills of exchange or bonds.

"But as to mere ordinary debts, reduced to no such concrete forms, they are not capable of acquiring any *situs* distinct from the domicile of the creditor, and no legislative power exists to change that *situs* so far as non-resident creditors are concerned.   As said by the Supreme Court of the United States: 'To call debts property of the debtors is simply to misuse terms.   All the property there can be in the nature of things, in debts, belongs to the creditors to whom they are payable, and follows their domicile wherever that may be.   Their debts can have no locality separate from the parties to whom they are due.' [State Tax on Foreign-held Bonds, 15 Wall. 300.]''

The above language is quoted with approval in the case of New Orleans v. Stempel, 175 U. S. l. c. 313, which case *apropos* of this very point, on pages 319 and 320, further says:

"With reference to the decisions of this court, it may be said that there has never been any denial of

the power of a State to tax securities situated as these
are, while there have been frequent recognitions of its
power to separate for purposes of taxation the *situs*
of personal property from the domicile of the owner.
In State Tax on Foreign-held Bonds, 15 Wall. 300, it
was held that while the taxing power of the State may
extend to property within its territorial limits, it can-
not to that which is outside those limits, and therefore
that bonds issued by a railroad company, although se-
cured by a mortgage on property within the State, were
not subject to taxation while in the possession of their
owners who were non-residents, the court saying: 'We
are clear that the tax cannot be sustained; that the
bonds, being held by non-residents of the State, are
only property in their hands, and that they are thus
beyond the jurisdiction of the taxing power of the
State.' But in the same case, on page 323, the court
declared: 'It is undoubtedly true that the actual *situs*
of personal property which has a visible and tangible
existence, and not the domicile of its owner, will in
many cases, determine the State in which it may be
taxed. The same thing is true of public securities con-
sisting of state bonds and bonds of municipal bodies,
and circulating notes of banking institutions; the for-
mer, by general usage, have acquired the character of,
and are treated as, property in the place where they
are found, though removed from the domicile of the
owner; the latter are treated and pass as money wher-
ever they are. But other personal property, consist-
ing of bonds, mortgages and debts generally, has no
*situs* independent of the domicile of the owner, and
certainly can have none where the instruments, as in
the present case, constituting the evidence of debt, are
not separated from the possession of the owners.'

"This last sentence, properly construed, is not to
be taken as a denial of the power of the Legislature
to establish an independent *situs* for bonds and mort-
gages when those properties are not in the possession

of the owner, but simply that the fiction of law, so often referred to, declares their *situs* to be that of the domicile of the owner, a declaration which the Legislature has no power to disturb when in fact they are in his possession.''

Since the facts here do not bring the property sought to be taxed within the statute, we see no reason why the section should as it stands, be invalid. This section applies as it now reads, to the taxation of the property of a deceased person in the State, county and school district in which such person lived in his lifetime and not elsewhere; to the taxation of the property of a minor or other person under guardianship, in the State, county and school district wherein such minor or other person resided on the statutory date of assessment, to-wit, June first (subject it may be in case of intangible property, to the rule announced in Leavell v. Blades, 237 Mo. 695), and to the taxation of the tangible property of a ward non-resident of the county, in the State, county and school district in which such property was situate on the date of the appointment of a guardian. The first clause of the last sentence alone applies to the taxation of the personal property of deceased persons. The last clause of the last sentence has reference to the taxation of the personal property of living persons under guardianship. Inferably the paramount object of the amendment of 1903 of this section was to abrogate the rule enunciated in State ex rel. v. McCausland, supra. In short, this amendment is an example of an all-too-common axe-grinding provision cunningly devised to confer an advantage upon a local community at the expense of its neighbors and to the unsettling of rules of law which had become fairly stable.

In no view which we have been able to take, is the position of the plaintiff tenable. If it be desirable or intended to tax a mortgage debt or note-evidenced debt due to an estate of a foreign decedent at the dom-

icile of the debtor in this State, then further amendment of this section will be necessary to obviate the unconstitutional phase which would now be met if we construe the section as plaintiff asks. Whether this would be fair or unfair, as an infringement of comity between the states, and whether it would be double taxation or not, is not for us to say at this time.

III. We are taking this case as we find it and as it comes to us. There are novel contentions urged in it, touching which the law should be announced; so we are regarding it broadly and not narrowly. Learned counsel for respondents in their original answer filed far back in the probate court, urge not insistently, but somewhat carelessly, "that said William H. Hickman . . . has no right or authority to prosecute this suit in the name of the State of Missouri or in any other manner whatever." But nowhere or in any way do learned counsel ever again refer to this matter or confide to us why this is so, if it is so. This answer was offered by appellants on the trial *nisi* as evidence against respondents upon the view, apparently, that it was an admission against interest made in an abandoned pleading. No point is made here by respondents in their brief that relator may not sue because by section 11713 of our statutes the county treasurer of Mercer county is *ex-officio* the collector thereof, and that he, therefore, and not Hickman, as township collector, should have filed in the probate court the demand upon which this action is bottomed. Since then respondents now neither raise nor urge this question, why should we not deem it to have been abandoned by them? So we neither raise nor decide this point here.

IV. The appellant contends that regardless of the question as to the correctness of his contentions on the matter of the right to collect these taxes on this property these cases must nevertheless be reversed because of the rendition by the learned court *nisi* of a

judgment against appellant for costs.   He urges that such a judgment against a collector, whether city collector, county collector, or township collector, or against the State, a county or a city, is forbidden by section 11487.   The appellant raises this question upon the record by his motion in arrest of judgment.   [State ex rel. v. Trust Co., 209 Mo. 472.]   The point, we think, is well taken.   [State ex rel. v. Trust Co., supra; Pollard v. Atwood, 79 Mo. App. 193.]   And for this error the cause must be reversed and remanded with directions to the trial court to render judgment for defendants, eliminating from such judgment the matter of adjudging costs against appellant.   It is so ordered.

*Walker, P. J.,* and *Brown, J.,* concur.