THE STATE EX REL. BUCHANAN COUNTY POWER TRANSMISSION COMPANY v. SAM A. BAKER ET AL., Members of State Board of Equalization, and J. T. WADDILL ET AL., Members of State Tax Commission.—9 S. W. (2d) 589.

Court en Banc, October 2, 1928.

*Charles H. Mayer, Roscoe P. Conkling* and *Floyd M. Sprague* for relator.

1148

*North T. Gentry*, Attorney-General, and *Smith B. Atwood*, Assistant Attorney-General, for respondents.

GANTT, J.—Relator fairly states the case as follows:

"This is an original certiorari proceeding in which relator, Buchanan County Power Transmission Company, seeks to quash the orders, judgments, records and proceedings of the State Tax Commission and the State Board of Equalization pertaining to relator's assessment for taxation purposes for the year 1927, on the ground that they are 'unauthorized, unjust, illegal and void, and without authority and beyond the jurisdiction' of respondents.

"Relator's petition alleged that it was a Delaware corporation duly licensed to do business in the State of Missouri, and that it was engaged in the business of buying, transmitting and selling electric energy, but not in such manner as to engage in the public utility business; that it owned and operated an electric transmission line located upon its privately owned right-of-way extending from East Atchison, Buchanan County, Missouri, to South St. Joseph, Buchanan County, Missouri; that it purchased electric energy delivered to it at East Atchison, Buchanan County, Missouri, from the Kansas Public Service Company, and that it sold said electric energy so purchased to only one customer, the St. Joseph Railway, Light, Heat & Power Company, which electric energy it delivered to the last-

named company near the southern limits of the city of St. Joseph, Missouri; that relator had no other customer, had never had any other customer, refused to take any other customer, and had never sold said electric energy to any other corporation, partnership or person; that it had not devoted its property to any public use in any manner whatever; that it had never asserted the power of eminent domain, and had never sought any franchise of any kind or character from any state or any subdivision thereof or from any municipality; that its property consisted of a high tension electric transmission line, including poles, wires, cross-arms, appurtenances and appliances thereto belonging, which was located upon its privately owned right-of-way; that it had no other property and that it had no property in the State of Missouri except in Buchanan County, Missouri; that the respondents, who were members of and composed the State Tax Commission and the State Board of Equalization, attempted to and did assess, value and equalize for taxation purposes the relator's property; that the respondents' action in that respect was illegal, null and void; that relator was not a public utility, and that the respondents had no jurisdiction or authority of original assessment save and except as to public utilities; that the Assessor of Buchanan County had made a valid and legal assessment of relator's property for taxation purposes; that relator was without other remedy, stating the reasons therefor.

"The writ of certiorari was issued by the court as prayed.

"Respondents filed a return to the writ of certiorari admitting certain formal averments of relator's petition and admitting that the respondents, who were members of and composed the State Tax Commission, proceeded to and did assess and value for taxation purposes relator's property, and that the respondents, who were members of and composed the State Board of Equalization, proceeded to adjust and equalize the valuation of relator's transmission line and approved and adopted the assessment thereof as fixed by the State Tax Commission, and that the then secretary of the State Tax Commission certified to Buchanan County, Missouri, the assessment of said property as so assessed and valued. In their said return, the respondents also denied the allegations of relator's petition to the effect that there was no authority under the laws of Missouri for the procedure adopted and followed by respondents in making said assessment and equalizing the same, and denied that in making said assessment and equalizing the same the respondents disregarded the laws of Missouri, but averred that the respondents, who were members of and composed the State Tax Commission, acted within their proper jurisdiction and authority in assessing relator's property for taxation purposes in the manner therein set forth, and that the respondents, who were members of and composed the State Board of Equalization,

acted within their proper jurisdiction and authority in adjusting and equalizing the value thereof in the manner therein set forth.

"Respondents further averred that the records so entered by the respondent boards, respectively, were lawful, binding and valid as to the relator. Attached to the return were full and complete copies of the findings and orders, entries and minutes of said State Tax Commission and said State Board of Equalization relevant to the assessment and valuation for taxation purposes of relator's property.

"The facts are set forth in an agreed stipulation of facts filed in this court. The stipulation is brief, and, for the convenience of the court, we herein set it out in full, except for the caption and signatures, which are omitted.

" 'It is hereby stipulated and agreed by and between the parties hereto that the following may be taken and considered by the court as undisputed facts in this cause, as follows:

" '(1) That relator is a corporation organized and existing under the laws of the State of Delaware with its principal office in the city of Dover, State of Delaware; that it is duly licensed to do business in the State of Missouri, and has complied with all the laws of the State of Missouri with reference to the right of foreign corporations to engage in business in the State of Missouri, and maintains its principal office, for the transaction of its business in Missouri, at 802 Corby Building, St. Joseph, Missouri; that Exhibit A, attached to relator's petition, is a true and correct copy of the certificate and license issued to relator by the Secretary of State of the State of Missouri.

" '(2) That relator is engaged in the business of buying, transmitting and selling electric energy and that it owns and operates an electric transmission line located upon its privately owned right of way extending from East Atchison, Buchanan County, Missouri, to South St. Joseph, Buchanan County, Missouri.

" '(3) That it purchases electric energy, delivered to it at East Atchison, Buchanan County, Missouri, from the Kansas Public Service Company, and that it sells said electric energy so purchased to only one customer, the St. Joseph Railway, Light, Heat & Power Company; and that it delivers said electric energy so purchased and transmitted to the last-named company near to and outside of the southern city limits of St. Joseph, Missouri.

" '(4) That relator has no other customer and does not hold itself out as seeking or desiring other customers for the sale of its electric energy, and does not otherwise sell or dispose of the same to any other corporation, partnership or person; that on the contrary relator has refused to furnish the public or any other user of electricity except the one customer above named, and has disclaimed any right or authority to serve the public generally.

" '(5) That relator has never asserted the power or right of eminent domain and has never sought or obtained any franchise in the nature of a contract to serve the public from any state or municipality.

" '(6) That the relator's property consists of a certain high tension electric transmission line, poles, wires, cross-arms, transformers, appurtenances and appliances thereto belonging, and that it owns no other property; that all of its said property in Missouri is located in Buchanan County, Missouri.

" '(7) That the Assessor of Buchanan County, Missouri, has assessed the property of relator for taxes in the same manner as other property of said County, not under the jurisdiction of the State Tax Commission for asssessment.'

"The certificate and license issued to relator by the Secretary of State, which was attached to relator's petition, and admitted in the foregoing stipulation of facts to be a true and correct copy, authorizes the relator to engage 'in the business of: to buy, manufacture, transmit and sell electric energy, and to do all things convenient, incident or necessary for such purposes, but not in such manner as to engage in the public service.'

"After the filing of the aforesaid stipulation as to the facts, relator filed its motion for judgment on the pleadings and the agreed statement of facts."

Relator's electric transmission line is subject to taxation. The question for solution is the location of the authority to assess said property. Respondents contend it is lodged with the State Tax Commission, and relator contends it is lodged with the County Assessor. If it is a public utility, the Tax Commission has authority to assess it. If it is not a public utility, we are to determine with whom the authority is lodged.

I. First, we will determine if relator's electric transmission line is a public utility. In this connection relator directs attention to the facts that its charter limits its activities to electric energy for private use, that it has no franchise, and that it has never exercised the right of eminent domain.

Charter authority to serve the public, a franchise and the right of eminent domain, if possessed, are to be considered in determining if a corporation is a public utility. However, the absence of charter authority to serve the public is not determinative of the question. In State ex rel. Danciger v. Public Service Commission, 275 Mo. 483, 492, 205 S. W. 36, we said:

"In determining whether a corporation is or is not a **public utility,** the important thing is not what its charter says it may do but what it actually does. [Terminal Taxicab Co. v. Kutz, 241 U. S. 252.]"

Also, the absence of a franchise or the absence of the exercise of the right of eminent domain are not determinative of the question. [Munn v. Illinois, 94 U. S. 113; Guiding Principles of Public Service Regulation, pp. 20 to 30.]

The statutes involved are as follows:

Section 10425, Revised Statutes 1919:

"The jurisdiction, supervision, powers and duties of the public service commission herein created and established shall extend under this chapter: . . .

"5. To the manufacture, sale or distribution of . . . electricity for light, heat and power, within the State, and to persons or corporations owning, leasing, operating or controlling the same; and to . . . electric plants, and to persons or corporations owning, leasing, operating or controlling the same. . . .

"9. To all public utility corporations and persons whatsoever subject to the provisions of this chapter as herein defined. And to such other and further extent, and to all such other and additional matters and things, and in such further respects as may herein appear, either expressly or impliedly."

Section 10411, Revised Statutes 1919:

"12. The term 'electric plant,' when used in this chapter, includes all real estate, fixtures and personal property operated, controlled, owned, used or to be used for or in connection with or to facilitate the generation, transmission, distribution, sale or furnishing of electricity for light, heat or power; and any conduits, ducts or other devices, materials, apparatus or property for containing, holding or carrying conductors used or to be used for the transmission of electricity for light, heat or power.

"13. The term 'electrical corporation,' when used in this chapter, includes every corporation, company, association, joint stock company or association, partnership and person, their lessees, trustees or receivers appointed by any court whatsoever (other than a railroad or street railroad corporation generating electricity solely for railroad or street railroad purposes or for the use of its tenants and not for sale to others) owning, operating, controlling or managing any electric plant except where electricity is generated or distributed by the producer solely on or through private property for railroad or street railroad purposes or for its own use or the use of its tenants and not for sale to others. . . .

"25. The term 'public utility,' when used in this chapter, includes every common carrier, pipe line corporation, gas corporation, electrical corporation, telephone corporation, telegraph corporation, water corporation, and heat or refrigerating corporation, as these terms are defined in this section, and each thereof is hereby declared

to be a public utility and to be subject to the jurisdiction, control and regulation of the commission and to the provisions of this chapter.''

Subdivisions 12 and 13 of Section 10411 were under consideration in the case of State ex rel. Danciger v. Public Service Commission, 275 Mo. 493, l. c. 494, where we said:

''For the operation of the electric plant must of necessity be for a public use, and therefore be coupled with a public interest; otherwise, the Commission can have no authority whatever over it. The electric plant must, in short, be devoted to a public use before it is subject to public regulation. [Munn v. Illinois, 94 U. S. 113.] Since, the sole right of regulation depends upon the public interest, the subdivisions quoted above, and which define an electric plant and an electric corporation, mean the same, whether the idea of a public use is expressly written therein or not; it is, nevertheless, of necessity connoted and to be understood therein. We are not to be understood as saying that an electric plant constructed solely for private use could not, by professing public service, become by such profession and by the furnishing of general public service, a public utility.''

Thus it appears that under the above statutes the Public Service Commission has no authority over property devoted to private use. However, respondent says:

''We are unwilling to concede relator's contention that it is not a public utility. While it does not serve the public individually, it is certainly an important link in the distribution of electric energy to the people of St. Joseph, Missouri. It purchases its electric energy from a public utility and sells same through a public utility.''

The trouble with this suggestion is that there is no evidence in the record tending to show that the St. Joseph Railway, Light, Heat & Power Company is a public utility within the meaning of the statute. And even if it is, the electric energy purchased by it from relator may, for aught that appears, be used solely for railroad or street railway purposes. If the record disclosed that the St. Joseph Railway, Light Heat & Power Company sells and distributes, as a public utility, the electric energy it purchases from relator, and that relator is ''an important link'' in such sale and distribution, we would have a different question for solution. But the mere purchase, transmission and sale of electric energy, a commercial product, without more, contains no implication of public service. On the showing made it must be held that relator is not a public utility.

1154

II. Respondents contend that the Tax Commission has the power of original assessment over the property of relator even though it is not a public utility.

The statutes involved are as follows:

Section 12847, Revised Statutes 1919:

"6. The commission shall have the exclusive power of original assessment of railroads, railroad cars, rolling stock, street railroads, bridges, telegraph, telephone, express companies, and other similar public utility corporations, companies and firms now possessed and exercised by the state board of equalization. Said commission shall also have all powers of original assessment of real and personal property now possessed by any assessing officer, subject only to the rights given by the Constitution to the State Board of Equalization."

Section 13056, Revised Statutes 1919, as amended by the Laws 1923, page 372:

"All bridges over streams dividing this State from any other state owned, controlled, managed or leased by any person, corporation, railroad company or joint stock company, and all bridges across or over navigable streams within this State, where the charge is made for crossing the same, which are now constructed, which are in the course of construction, or which shall hereafter be constructed, and all property, real and personal, including the franchises owned by telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* and express companies, shall be subject to taxation for state, county, municipal and other local purposes to the same extent as the property of private persons. And taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this State, and county courts, and the county and state boards of equalization are hereby required to perform the same duties and are given the same powers in assessing, equalizing and adjusting the taxes on the property set forth in this section as the said courts and boards of equalization have or may hereafter be empowered with in assessing, equalizing, and adjusting the taxes on railroad property; and the president or other chief officer of any such bridge, telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* or express company, or the owner of any such toll bridge, is hereby required to render statements of the property of such bridge, telegraph, telephone, *electric power and light companies, electric transmission lines, oil pipe lines,* or express companies, in like manner as the president, or other chief officer of the railroad company is now or may hereafter be required to render for the taxation of railroad property."

The italicized words were inserted in the section by the Legislature in 1923.

Relator contends said Subdivision 6 is the sole power and authority of original assessment possessed by the Tax Commission, and that Section 13056, as amended by the Laws of 1923, confers no power or authority on the Tax Commission to assess property, but only provides a method of levying and assessing taxes.

Respondents contend that the expression "*now* possessed and exercised by the State Board of Equalization" in Subdivision 6 limits the authority of original assessment conferred on the Tax Commission to authority *then* possessed by the State Board of Equalization. However, they insist that the power to originally assess relator's property is conferred on the Tax Commission by Section 13056. That section provides that taxes levied on electric transmission lines "shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property."

We think the word "manner" as used in said section covers not only the method of assessment of electric transmission lines, but also locates the authority to make the assessment with the Tax Commission. [State ex rel. Union Electric Light & Power Co. v. Gehner, 286 S. W. l. c. 119: State ex rel. Union Electric Light & Power Co. v. Baker, 293 S. W. l. c. 402.]

The power of original assessment over purely local property is fixed by Section 10, Article X, of the Constitution in the following words:

"The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

Thus it appears that local property must be assessed by local authorities. If, therefore, the Legislature intended by the amendment of 1923 to Section 13056 to confer upon the Tax Commission the power of original assessment over local property devoted to private use, then said amendment is violative of this section of the Constitution. [Laclede Land & Improvement Co. v. State Tax Commission, 295 Mo. 298. l. c. 305, 243 S. W. 887.] However, if the Legislature only intended to confer on the Tax Commission the power of original assessment over public utility electric transmission lines, then said amendment is a valid law. We will not assume that the Legislature undertook the enactment of an unconstitutional law. Rather, we hold that by the amendment the Legislature intended to confer upon the Tax Commission the power of original assessment over only public utilities.

It follows that relator's motion for judgment on the pleadings and the agreed facts is sustained, and all of the acts, orders, judgments and proceedings of respondents as members of the State Tax Com-

mission and the State Board of Equalization of Missouri with reference to the attempted assessment and valuation of relator's electric transmission line are quashed. *White, C. J.,* and *Ragland,* and *Walker, JJ.,* concur; *Blair, J.,* concurs in the result; *Atwood, J., dubitante; Gentry, J.,* not sitting.