CITY OF ST. LOUIS v. MISSISSIPPI RIVER FUEL CORPORATION.
No. 11087.

Circuit Court of Appeals, Eighth Circuit.
July 5, 1938.

Oliver Senti, of St. Louis, Mo. (Edgar H. Wayman, John G. Burkhardt, Michael J. Ebeling and Francis Finley, all of St. Louis, Mo., on the brief), for appellant.

Frank H. Sullivan and Hugh H. Sullivan, both of St. Louis, Mo. (William O. Reeder and Ralph T. Finley, both of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The City of St. Louis, Missouri, is here appealing from a decree of the district court declaring the city's ordinance No. 40787, as applied to appellee and its business, illegal and void, and perpetually enjoining the city from demanding the taxes sought to be imposed upon appellee thereunder.

Ordinance No. 40787 was enacted by the Board of Aldermen of the City March 19, 1936, and was approved by the Mayor and, by its terms, became effective March 20, 1936. Its pertinent parts provide:

"Ordinance 40787.

"An ordinance providing for a tax to be paid by persons, firms or corporations engaged in the business and distributing and selling natural, artificial or mixed natural and artificial, gas for heating, lighting, power, or refrigeration for public use in the City of St. Louis, as a tax for the use and occupation of the streets and other public highways of the City of St. Louis by such persons, firms or corporations for their distribution systems, and containing an emergency clause.

"Be it ordained by the City of St. Louis, as follows:

"Section One. Every person, firm or corporation engaged in the business of distributing and selling natural, artificial or mixed natural and artificial, gas for heating, lighting, power, and refrigeration for public use in the City of St. Louis, through pipe lines laid in the streets and other public highways of said city, shall pay to the City of St. Louis a tax equal to five per cent. (5%) of the gross receipts from such business as a tax for the use and occupation of the streets and other public highways of the City by such person, firm or corporation for its distribution system. * * *

"Section Three. The tax herein required to be paid shall be a tax on the use and occupation of the streets and other public highways of the City of St. Louis for the pipe lines of the distributing system of persons, firms, or corporations engaged in the business of distributing and selling natural, artificial, or mixed natural and artificial, gas for heating, lighting, power, and refrigeration for public use in the City of St. Louis, and nothing herein contained shall be so construed as to exempt any such person, firm or·corporation from the payment to the City of St. Louis of manufacturer's and merchant's excise tax, nor from the payment of the tax which the City of St. Louis levies upon any real, personal property or franchise belonging to any such person, firm or corporation."

The bill of complaint, after alleging jurisdictional facts and the character of appellee and the nature of its business, prayed that the ordinance be adjudged invalid and void as applied to appellee and its business and that the city be enjoined from ·enforcing it against appellee, on the ground, among others, that the ordinance does not, by its terms, apply to the appellee or to its business.

The answer admitted the jurisdictional facts and the formal averments of the bill, and denied specifically each separate ground upon which appellee sought relief.

The court, after making findings of fact, based the decree upon the conclusion of law that "The ordinance in question applies only to persons, firms, or corporations

engaged in the business of selling gas 'for public use', and since under the facts found the plaintiff is not engaged in selling gas for public use, the ordinance, by its terms, does not apply to the plaintiff, and no tax can be collected against the plaintiff thereunder."

It is claimed by appellant that the court erred in so holding and in issuing an injunction.

To see the problem presented by the alleged error in its proper light requires a review of the material facts. Although appellant attacks some of the inferences drawn by the court below, the ultimate facts are not in dispute.

The appellee is a Delaware corporation owning and operating a gas pipe line system which extends from a natural gas producing field in the state of Louisiana through Arkansas into Missouri and Illinois. The total length of its line is 731.37 miles, of which 12.553 miles are within the city limits of St. Louis. Within the city 11.08 miles of line are laid on the right of way of railroads; but it traverses and crosses some 54 highways and streets. The total length of line across streets and highways in the city is .74 miles. In crossing streets the lines are laid from 2½ to 23 feet below the surface. Permits were obtained from the city for the purpose of laying the pipes.

By its charter appellee is authorized to purchase and acquire natural gas, to transport it in its pipe line, and to sell such gas by private contract, but not to transport as a common carrier for hire nor to sell such gas as a public utility. It has no power of eminent domain; nor has it any franchise to distribute or sell gas as a public utility.

Prior to beginning its operations in the state of Missouri appellee procured a license from the Secretary of State to engage in business in the state. Under this license appellee is limited to the transportation, sale and delivery in interstate commerce of natural gas purchased and sold by it; and its authority is limited to the sale of gas by private contract, and not as a public utility.

The appellee has two classes of customers in the state of Missouri: (1) Public utilities and (2) industrial customers. The public utility customers purchase gas for resale, and appellee has no other connection, directly or indirectly, with such customers. The only utility to which appellee sells gas in St. Louis is the Laclede Gas Light Company, which is a distributing utility operating only within the City of St. Louis. It purchases natural gas from appellee for resale to industries and for mixing for sale to domestic and commercial consumers.

Appellee sells and delivers natural gas to 14 industrial customers in St. Louis. Sales to industrial customers are always by special contracts, entered into after negotiations with the customer. The contracts vary as to terms and conditions. They all provide that the gas is to be brought from Louisiana and delivered to the purchaser. Appellee offers no gas to the public directly or generally for any use.

In addition to the tax here in question appellee is subject in St. Louis to an ad valorem property tax and a merchants' license tax levied by the city.

■ The correctness of the finding of the court to which exception is taken, that "the ordinance, by its terms, does not apply to plaintiff" (appellee), is to be determined by a proper construction of the language of the ordinance in the light of the facts just recited. The settled rule of construction, since this is a taxing statute, is that it must be construed strictly. Its scope can be enlarged neither by implication nor by judicial amendment. St. Louis & S. F. Ry. Co. v. Apperson, 97 Mo. 300, 10 S.W. 478, 480, 481; Smietanka v. First Trust & Savings Bank, 257 U.S. 602, 606, 42 S.Ct. 223, 66 L.Ed. 391.

By the provisions of the ordinance the tax is imposed only upon every person, firm or corporation engaged in the business of distributing and selling gas "for heating, lighting, power, and refrigeration for public use in the City of St. Louis, through pipe lines laid in the streets * * *." Selling gas "for heating, lighting, power, and refrigeration" is not enough to bring appellee within its provisions unless it sells "for public use." Neither is it sufficient if it has laid its pipe lines in the streets of the city, if such pipe lines are not so laid for the purpose of distributing its gas "for public use." State Public Utilities Commission v. Telephone Association, 270 Ill. 183, 110 N.E. 334, Ann.Cas.1917B, 495.

■ It is necessary, therefore, to determine only the meaning to be attributed to the words "for public use" as they are used in the ordinance. Why did the Board of Aldermen use this qualifying phrase? The

context was complete without it. Much learning and research have been devoted to the several possible meanings of the phrase in the briefs, but it will be neither profitable nor necessary to discuss them all. Its meaning is not to be determined by casuistic analysis, but by reference to its use in the law particularly the law of Missouri. Erie Railroad Company v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, decided April 25, 1938.

 Under the law of Missouri, in so far as any statute or decision has been called to our attention, or in so far as we have been able to find by our own research, the expression "public use", when used in speaking of distributors and sellers of gas or electricity, has but one significance. It is applied to the business of public utilities only. It is reasonable to assume, therefore, that the Board of Aldermen in enacting the ordinance had in mind public utilities, and that they meant to apply its provisions only to public utilities.

The term, public use, does not appear to have been defined in any statute by the legislature of Missouri, but the highest court of the state in its decisions regards the terms as the distinctive badge of a public utility, and the characteristic by which it is determined whether a particular business is or is not a public utility. The statutes of Missouri create a Public Service Commission with certain defined powers over public utilities including common carriers, pipe line corporations, gas corporations, electrical corporations, and others. Subdivision 25, § 10411, R.S.Mo.1919, Mo.St.Ann. § 5122, subd. 25, p. 6533. Subdivisions 12 and 13 of said section, Mo.St.Ann. § 5122, subds. 12, 13, p. 6533, define the terms "electric plant" and "electrical corporation". In referring to these provisions of the statute the Supreme Court of Missouri in State ex rel. M. O. Danciger v. Public Service Commission, 275 Mo. 483, 205 S.W. 36, 40, 18 A.L.R. 754, said:

"While the definitions quoted supra express therein no word of public use, or necessity that the sale of the electricity be to the public, it is apparent that the words 'for public use' are to be understood and to be read therein. State ex rel. v. Spokane, etc., [R. Co.] 89 Wash. 599, 154 P. 1110 [L. R.A.1918C, 675]. For the operation of the electric plant must of necessity be for a public use, and therefore be coupled with a public interest; otherwise the Commission can have no authority whatever over it. The electric plant must, in short, be devoted to a public use before it is subject to public regulation. Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77. Since the sole right of regulation depends upon the public interest, the subdivisions quoted above, and which define an electric plant and an electric corporation, mean the same, whether the idea of a public use is expressly written therein or not; it is, nevertheless, of necessity connoted and to be understood therein. We are not to be understood as saying that an electric plant constructed solely for private use could not, by professing public service, become by such profession, and by the furnishing of general public service, a public utility."

In the Danciger Case the court was required to determine whether or not a corporation furnishing electricity to between 20 and 30 business houses and some 10 residences, and furnishing 30 or 32 street lights for 5 or 6 of which the city paid it the sum of $19.50 monthly was a public utility subject to the regulatory power of the commission. It was held that whether or not the corporation was a public utility depended upon whether or not it furnished electricity "for public use." In formulating a test Judge Faris (now a member of this court), speaking then for the Supreme Court of Missouri, reviewed the authorities and approved this statement from 1 Wyman on Public Service Corporations, 243: "That the business of supplying gas is public in character is now universally recognized, provided that the company supplying is committed to supplying gas to the community in general. * * * There are, however, several cases where the company supplying electricity [gas] has not professed to sell to the public indiscriminately at regular rates, but has from the beginning adopted the policy of entering into special contracts upon its own terms; such companies are plainly engaged in private business." Applying this test the court held that Danciger & Co. was not a public utility. That decision was followed by the Supreme Court of Missouri in State ex rel. Buchanan County Power Trans. Co. v. Baker, 320 Mo. 1146, 9 S.W.2d 589. In that case it was pointed out that (page 591) "Charter authority to serve the public, a franchise, and the right of eminent domain, if possessed, are to be considered in determining if a corporation is a public utility. However, the absence of charter authority to serve the public is not determi-

native of the question." Citing Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S. Ct. 583, 60 L.Ed. 984, Ann.Cas.1916D, 765.

■ We conclude that under Missouri law the term "for public use," as used in the ordinance under consideration, means the sale of gas to the public generally and indiscriminately, and not to particular persons upon special contract. This construction of the phrase is the one generally understood and applied. In State Public Utilities Commission v. Telephone Association, supra, the Supreme Court of Illinois says (110 N.E. page 335) :

"To constitute a public use all persons must have an equal right to the use, and it must be in common, upon the same terms, however few the number who avail themselves of it. * * * People v. Ricketts, 248 Ill. 428, 94 N.E. 71.

"The words 'public use' mean of or belonging to the people at large, open to all the people to the extent that its capacity may admit of the public use [citing authorities]. The use must concern the public as distinguished from an individual or any particular number of individuals."

In 50 C.J. 865 it is said: "In general it may be said that a public use is one which concerns the general public or a portion thereof as distinguished from particular individuals or estates." In this view the ordinance clearly is not applicable to the appellee.

■ It is true, as pointed out in cases cited by appellant, if a corporation is chartered as a public utility and is given the right of eminent domain, it may be held to be a distributor of either gas or electricity for public use even though it engages in wholesale and not retail distribution. Salisbury & Spencer Railway Company v. Southern Power Company, 179 N.C. 330, 102 S.E. 625, 12 A.L.R. 304, Id., 179 N.C. 18, 101 S. E. 593, 12 A.L.R. 304; People's Natural Gas Co. v. Public Service Commission, 279 Pa. 252, 123 A. 799; North Carolina Public Service Commission v. Southern Power Company, 4 Cir., 282 F. 837, 33 A.L.R. 626, certiorari dismissed 263 U.S. 508, 44 S.Ct. 164, 68 L.Ed. 413.

■ It is argued that because appellee sells gas at wholesale under a special contract to the Laclede Company, which is a public utility, and is licensed to do business in the state, it is a public utility engaged in selling gas for public use within the meaning of the ordinance. We find no authority

supporting this proposition. The cases cited in its support are cases in which the corporation was either chartered as a public utility or had the power of eminent domain. The sale to the Laclede Company alone is not sufficient to transform what is otherwise a private business into a public business any more than would the sale of a locomotive to a railroad company make the seller a common carrier.

We are of the opinion that the district court did not err in holding that the ordinance does not apply to the appellee for the reason that it is not engaged in the business of selling gas "for public use."

Affirmed.