ST. LOUIS AMUSEMENT COMPANY, a Corporation, Appellant, v. COUNTY OF ST. LOUIS.—147 S. W. (2d) 667.

Division One, February 14, 1941.

*Jones, Hocker, Gladney & Grand, Joseph H. Grand* and *Lon Hocker, Jr.,* for appellant.

*Erwin F. Vetter* for respondent.

DOUGLAS, J.—Is the motion picture theatre of today in the same legal category with the opera house of 1885?  This is the question we must decide.

St. Louis County has assessed a license tax under authority of Chapter 139, Revised Statutes 1939, and particularly Section 15451, which permits the licensing of theatrical or minstrel performances, exhibits, shows and circuses, against four moving picture shows operated by appellant in its four theatres in the county. Appellant seeks a judgment declaring its shows exempt from such license tax under the specific proviso of Section 15450 that no license or other tax shall be levied "upon any theatrical or minstrel performance when held in any opera house in any village or city of the third or fourth class. . . ." The power given in Section 15451 is expressly subject to this exemption and thus arises the question before us. We first find this exemption in the laws of 1885 (page 68), although the power to license public theatrical performances had been granted long before.

Determining the purpose of the Legislature in creating this exemption must of necessity drive one into the field of speculation. The purpose may have been to promote the building of opera houses or to provide halls for public exhibitions. The early opera house in many Missouri towns was merely a hall upstairs over a store. We are urged by appellant that the purpose was to discourage tent shows or fly-by-night carnivals or exhibitions of an immoral or illegal character of insufficient dignity for performance in the opera house. But we do not have to say that the more genteel atmosphere of an opera house would produce this result.

We need not conjecture as to the intent of the Legislature in creating this exemption because we find the language of the statute is plain. And where the language of a statute is plain and unambiguous it may not be construed. It must be given effect as written.

There can be no doubt but that the term "opera house" was used as a synonym for the word "theatre." Webster's International Dictionary, 2d Edition, defines opera house as "a theatre devoted principally to the performance of operas" and, still more persuasive here, "loosely, in small towns, a theatre." A theatre is defined as "an edifice for dramatic performances or spectacles."

In theatrical history the height of magnificence in building and lavishness in decoration was attained in the completion of the opera house for the Paris Grand Opera in 1874. The Encyclopaedia Americana describes it as "a sumptuous edifice." In magnificence and costliness it was "easily the first theatre of the Nineteenth Century." With this high example of splendor and glory even an humble and modest theatre soon became known as an "opera house," a more impressive term, or, with greater bravado, as the "Grand Opera House." In Chicago the "Vanities Theatre" became the "Grand Opera House." [See Otis Skinner, Footlights and Spotlights, page 227.] In April, 1879, New York had its "Grand Opera House." In 1881 Ben De Bar's Opera House in St. Louis became the "Grand

Opera House.'' [Scharf's History of St. Louis, Vol. I, page 979.] In the history of Thespian Hall of Boonville by Charles van Ravenswaay, we find that in 1901 it was rechristened ''The Stephens Opera House.'' Under its new name it became ''A place of light, a bower of beauty.'' Even before this wave of name changing there was the Coates Opera House which is described by the Kansas City Star as ''Kansas City's first legitimate theatre'' and it proclaimed ''our first dramatic voice in the wilderness.'' Such eminent authorities on Missouri History as Professor William Glasgow Bruce Carson of Washington University and McCune Gill, Esq., of St. Louis, support the theory that the ''opera house'' was merely the theatre of the community and used for any and all types of theatrical productions.

█ The use of the name opera house did not pretend to limit the performances in the premises to opera because, while opera was indeed known here, it was not generally popular throughout Missouri. St. Louis boasted of performances of grand Italian opera and was known as a good field for opera troupes. [Encyclopedia of the History of St. Louis, Vol. 3, pp. 1601-6.] According to Floyd C. Shoemaker, our noted historian and Secretary of The State Historical Society of Missouri, our history indicates that opera was not then widely performed throughout the State. Today opera has become more popular. We have the grand opera, and the light opera, the comic opera and the operetta. St. Louis has its deservedly famous ''Muny'' opera. The motion pictures present from time to time opera both light and heavy. If we adopt the definition of the word ''opera'' from Bell v. Mahn, 121 Pa. 225, 15 Atl. 523, a vast number of motion pictures would be included. ''Opera,'' says this case, is ''a musical drama . . . enriched with magnificent scenery, machinery, and other decorations, and representing some passionate action.'' Nor was opera performed only in an ''opera house.'' The early home of grand opera in London is still known as the Covent Garden Theatre. The first opera performed in the United States is thought to have been ''Flora, or Hob in the Well,'' given in Charleston, S. C., in, of all places, the courtroom. [Oxford Companion to Music, p. 640.]

Consequently, the designation ''opera house'' of the place of performance was not the condition for the exemption. It is plain that if a theatrical performance was held in a theatre, no matter how humbly or extravagantly the theatre was labeled, it was exempt.

█ The parties agree, with legal authority in support, that a moving picture show is a theatrical performance. They also agree that the shows subjected to the license tax are held in theatres. Therefore, appellant is entitled to a declaratory judgment exempting it from the license tax in question in accordance with the statute.

The judgment denying the exemption is reversed and the cause is remanded with directions to enter a declaratory judgment in conformity with this opinion. All concur.