**UNITED AIR LINES, INC., a Corporation, Respondent,**

v.

**STATE TAX COMMISSION of Missouri, and James M. Robertson, John A. Williams and J. Ralph Hutchison, As Members of the State Tax Commission, J. R. Towson, Secretary of the State Tax Commission, and Donald F. Warren, County Clerk of Clay County, Missouri, Appellants.**

No. 49953.

Supreme Court of Missouri,

En Banc.

March 9, 1964.

Opinion Modified April 13, 1964.

Thomas F. Eagleton, Atty. Gen., Joseph Nessenfeld, Asst. Atty. Gen., Jefferson City, for appellants.

John R. Moberly, Douglas Stripp, George T. Morton, Jr., Kansas City, for respondent, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

EAGER, Chief Justice.

■ United Air Lines, Inc., respondent, filed its petition for the review of an assessment order of the State Tax Commission, pursuant to Chap. 536, RSMo 1949, V.A.M.S.; we will refer generally, however, to the 1959 Revision, since the assessment was of the 1960 tax. More specifically, the Commission made an ad valorem assessment of $848,210 upon aircraft of United. On review, the order was reversed and the cause remanded with directions to fix an assessment not in excess of $264,287. The Commission, its members, and its Secretary appealed. A separate cross-appeal was taken by United on one phase of the matter, but that appeal has been dismissed and it will not be con-

sidered. We have jurisdiction because the appeal involves the construction of our revenue laws, specifically Chap. 155, being SB 179 of the Laws of 1959.

The facts were stipulated for the purposes of the review. Essentially, they were and are as now stated. United Air Lines, Inc. (to be designated as United) is an air carrier operating in interstate commerce pursuant to federal authority; it is a Delaware corporation, with its principal place of business in Chicago; it is not qualified to do business in Missouri. It operates over certificated routes in various states. During 1959, the year in which its operations are now involved, it did *not* operate intrastate between any points in Missouri, and the only Missouri airport at which it made scheduled landings and takeoffs was the Municipal Airport in Kansas City, Clay County, Missouri, where it also had and has a business office. During 1959 it made 1,510 arrivals and departures there. The length of the certificated routes in Missouri was 213 miles; overall, throughout United's system, the total length was 11,613 miles. Thus, the ratio of route miles in Missouri to total route miles was 1.83415%. The aircraft of United which operated in Missouri in 1959 flew a total of 281,231 air commerce miles; all of United's planes engaged in commerce flew, everywhere, a total of 129,862,887 air miles in 1959. Only two types of planes were used in Missouri in 1959, DC-6 Coaches and DC-7 First Class; the craft of these types flew, respectively, in Missouri and elsewhere, totals of 20,008,128 miles and 34,935,017 miles, or a total of 54,943,145 air miles. The ratio of air miles flown in Missouri to *all* air miles of United is .21655%; the ratio of miles flown in Missouri to all air miles flown by the types of planes operating in Missouri, is .51186%. The record contains no breakdown on the individual planes of these types.

As required by § 155.020, United filed with the Commission a report as of January 1, 1960, listing 28 DC-6 Coaches and 38 DC-7 First Class craft, being the types used in Missouri in 1959; it also listed 41 Convair 340s, 9 DC-6 First Classes, 7 DC-6A Cargos, 36 DC-6B First Classes, 5 DC-6C Coaches, 15 DC-7 Coaches, and 15 DC-8 Jets, as being types of aircraft which were used outside of Missouri. Thus, United owned and listed 194 craft of nine types, 66 of which (of two types) had been flown in Missouri, whereas the remaining 128 had not. The original cost of all the 194 aircraft of United was $286,671,317; as depreciated by United this total cost had been reduced to $159,527,-624; as depreciated by the Commission on the "straight-line" basis (10% per year for seven years, 5% for the eighth year, and none thereafter), the cost was $168,-824,483. The corresponding figures for the two types of planes flown in Missouri were: $96,525,498 (original cost); $40,-066,282 (United's depreciated cost); $47,-201,434 (Commission's depreciated cost). Of one type used in Missouri (DC-6 Coach) 24 of the 28 had been purchased in or prior to 1948, and 4 in 1950; of the other type (DC-7 First Class) all had been purchased in 1954–1957, inclusive. The result of the Commission's method of depreciation was that no valuation was permitted to go below 25% of the original cost. A good proportion of United's more expensive and newer planes were not flown in Missouri at all in 1959, and none of its 24 newest.

Section 155.040, which provides for the assessment of aircraft, is as follows: "1. The state tax commission shall assess, adjust and equalize the valuation of all aircraft operated in this state in air commerce by every airline company. The valuation apportioned to this state shall be the portion of the total valuation of the aircraft as determined by the state tax commission on the basis of the arithmetical average of the following two ratios:

"(1) The ratio which the certificated route miles of the airline company within

the state bears to the total certificated route miles of the airline company;

"(2) The ratio which the miles flown by aircraft of the airline company within this state bears to the total miles flown by the aircraft of the airline company during the immediately preceding calendar year.

"2. In the event one ratio is inapplicable, then the apportionment shall be made on the basis of the remaining ratio alone." Section 155.050 provides that the Commission shall apportion the valuation, as determined under § 155.040 to the various governmental subdivisions "in which the airline company has arrivals and departures." Section 155.060, relied on in part by appellants, is (in so far as material here) as follows: "Taxes levied on all aircraft under this chapter shall be levied and collected in the manner provided for the taxation of railroad property, and the county courts and other officials shall perform the same duties and may exercise the same powers in levying and collecting the taxes on aircraft as such officials are required to perform in the levy and collection of taxes on railroad property. * *"

Section 155.020 (the "reporting" section) requires that each airline company shall, on or before May 1st in each year, furnish to the Commission a sworn statement showing: "(1) The total length in this state of its certificated routes; (2) The total length of its certificated routes; (3) The total miles flown in this state by its aircraft during the next preceding calendar year; (4) The total miles flown by such aircraft during the next preceding calendar year; (5) The total number of all aircraft owned, used or leased by such airline company on the first day of January in each year, and the actual cash value thereof; (6) The other information the state tax commission requires to enable it to carry out the provisions of this chapter." United filed the required report and it is largely from the report that the present facts are stipulated.

The Commission fixed the amount of its assessment ($848,210) by first taking the total value (depreciated cost) of *all* of United's aircraft, including those not operated in Missouri in 1959, a figure of $168,-824,483; it applied to this its equalizing factor of 49%, thus resulting in an equalized valuation of $82,723,997 as its valuation of United's entire fleet. It then applied to *that figure* (the equalized value of *all* planes) the average of the two ratios provided in § 155.040, the first being 1.-83415%, the second .21655% and the average 1.02535%. The resulting figure was $848,210, which represents that part of the valuation apportioned to Missouri. The assessment was certified to the County Clerk of Clay County for the extension and levy of the taxes. The Circuit Court stayed those proceedings, and in its judgment enjoined the Clerk from levying taxes upon any valuation in excess of $264,287. We need not digest respondent's petition for review. It alleges, most fully, all necessary facts and all contentions developed in attacking the assessment. It will be more understandable to discuss the rulings of the trial court after the contentions of the parties have been elaborated and determined here.

The arguments here involve a supposed similarity of legislative intent in the airline statutes and the *railroad* assessment statute. Hence, we quote the material parts of § 151.060, as follows: "The state tax commission shall assess, adjust and equalize the aggregate valuation of the property of each one of the railroad companies in this state specified in section 151.020. * * * provided, that when any railroad shall extend beyond the limits of this state and into another state in which a tax is levied and paid on the rolling stock of such road, then the said commission shall assess, equalize and adjust only *such proportion of the total value of all the rolling stock* of such railroad company as the number of miles of such road in this state bears to the total length

of the road as owned or controlled by such company." (Italics ours.)

The basic issue here is whether the Commission was authorized by Chap. 155 to apply the average of the two ratios specified in § 155.040 to the equalized valuation of *all* aircraft of United (as it did) or whether it should have been applied *only to the* equalized valuation of those "aircraft operated in this state in air commerce," or, in other words, *only to the valuation of those planes which were flown in Missouri* during 1959. An opinion was written in Division One in a substantially identical case involving Delta Air Lines, upholding the assessment as so made by the Commission; that case was transferred to the Court in Banc where it has again been argued and is now pending. We shall find it necessary to refer to that opinion at times, as the most direct method of indicating our views. We now hold that the present assessment of United was not authorized by the statutes; so holding, it will not be necessary to decide the various and sundry constitutional contentions of invalidity asserted by respondent and refuted by appellants. Respondent does not contend that these statutes are unconstitutional under the view we now take (Br. 49–50).

■ We examine, first, the vital assessment Section 155.040. (Italics used here are ours.) It directs the Commission to assess, adjust and equalize *"the valuation of all aircraft operated in this state in air commerce* by every airline company." The sentence immediately following (which constitutes the *nub* of this controversy) is: "The valuation apportioned to this state shall be the portion of the total valuation of *the aircraft* as determined by the state tax commission on the basis of the arithmetical average of the following two ratios: * * *." It is inconceivable to us that in this short integrated paragraph the legislature, having specifically referred to *"aircraft operated in this state"* in one sentence, should intend any other or wider meaning in the sentence immediately following, when

it used the term *"the aircraft."* The grammatical rule of "prior antecedent" is applicable here and it, as well as sound common sense, requires such a construction. Thus, the *prior* words "aircraft operated in this state" have been *replaced and referred to by a substitute,* namely, *"the aircraft"* (Webster's Third New Inter. Dictionary "antecedent," p. 91). In fact, the phrase in question constitutes the only really applicable antecedent of the words "the aircraft." If the legislature had intended to prescribe the "total valuation" of *all* aircraft, it would have been very easy to *say so,* at that point, by the insertion of the one word *"all."* We are guided by what the legislature says, and not by what we may think it meant to say.

■ In a taxing statute there must be specific authority, or authority necessarily implied, for the imposition of a tax upon any particular property. Kansas City v. Frogge, 352 Mo. 233, 176 S.W.2d 498, 501; State ex rel. Halferty v. Kansas City Power & Light Co., 346 Mo. 1069, 145 S.W. 2d 116, 120, 121; Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343, 347. We find no specific or necessarily implied authority here for including in this formula the valuation of *all* of United's planes. And therein we have considered the primary rule of construction, namely, to seek to ascertain the legislature's intent and purpose, giving a plain and rational meaning to the words used. Coale, supra; A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544. If the language used is plain and unambiguous, there is no reason for any construction, St. Louis Amusement Co. v. St. Louis County, 347 Mo. 456, 147 S.W.2d 667; State ex rel. Hopkins v. Stemmons, Mo.App., 302 S.W. 2d 51, 55; In re Sypolt's Adoption, Mo., 237 S.W.2d 193; but where any real doubt exists in the construction of a taxing statute, the law requires that it be strictly construed in favor of the taxpayer. A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544; Crooks v. Harrelson, 282 U.S. 55, 61, 51 S.Ct. 49, 75 L.Ed. 156; Howell v. Division of Em-

ployment Security, 240 Mo.App. 931, 222 S.W.2d 953, 956; Osterloh's Estate v. Carpenter, Mo., 337 S.W.2d 942, 947. In the case last cited the Court said, loc. cit. 947 of 337 S.W.2d: "Tax laws must be strictly construed and, if the right to tax is not plainly conferred by statute, it will not be extended by implication. * * * A legislative intent to tax this property as a transfer in contemplation of death is not clearly expressed and we cannot imply one." And, as was said rather graphically by Judge Lamm in Leavell v. Blades, 237 Mo. 695, 141 S.W. 893, loc. cit. 894: "When the tax gatherer puts his finger on the citizen, he must also put his finger on the law permitting it."

■ It has been suggested that the words "all aircraft operated in this state," appearing in the first sentence of § 155.040, merely serve to identify the craft upon which taxes shall be assessed, in order to avoid possible constitutional objections to the ad valorem taxation of craft having no Missouri situs; and that the words have no bearing upon or reference to the apportionment provisions. We note, however, that the railroad section (151.060) contained no such limitation and its constitutionality has not been impugned. It appears rather plain, therefore, that the words have a real meaning in the vital step of assessment and that they were inserted for a definite purpose, which will only be realized if the words "the aircraft" in the second sentence are held to refer back to "all aircraft operated in this state." And, as said in a dissenting opinion in the Delta case in Division, the contention "is an unsupported statement that the legislature did not mean what it said by the plain * * * language used."

Appellants insist that the assessment was not unreasonable nor arbitrary and that it was made strictly in accordance with Chap. 155, considered as a whole; and, more specifically, that these statutes express a legislative intent to tax aircraft *"in the manner provided for the taxation of rail-*

*road rolling stock * * *."* The Divisional opinion in the Delta case began its consideration of the merits with the statement that it seemed obvious that the legislature had thus "extended to commercial airline companies the unit method of assessment heretofore applied to the rolling stock of railroads." We hold both the contention of counsel here and the statement in Division to be unfounded. We have quoted § 151.060 above. It provides that: "The * * * commission shall assess * * * such proportion of the *total value of all the rolling stock of such railroad"* as the miles in this state bear to the total length of the road. The contention virtually ignores the different wordings of the railroad statute and of ours; there the legislature *specifically* provided for apportioning to Missouri a part of the *total value of all rolling stock;* with full knowledge (presumably) of what it had previously enacted, it provided here that the proportion should be a part of the "total value of *the* aircraft," which with nothing more stated, clearly related back to "aircraft operated in this state." Thus, from the crucial assessment section no support can be gained for such a contention. Counsel ask us to note the words "total value," and we have done so; but there may as well be, and is, a total value of the 66 aircraft flown in Missouri as a total value of *all* aircraft of the company. That phrase is insufficient to support the formula used.

■ Discussing further the railroad theory of apportioning to Missouri a portion of the *"unitary"* value of the whole line, appellants' counsel call our attention to two other sections of Chap. 155. The first is § 155.020 requiring reports; they note that this section requires the reporting of the total number of all aircraft owned or leased and the cash value thereof, but not the number or value of craft operated in Missouri; and also the certificated routes and miles flown, separately, within and without the State. We note here that the section also requires "the other information" which the Commission may require; and also, that

while (3) requires "[t]he total miles flown in this state by its aircraft * * *," (4) requires "[t]he total miles flown by *such aircraft* * * *." Query—does "such" mean all aircraft, or those which were "flown in this state"? By these arguments counsel is really contending that the words "the aircraft" in the second sentence of § 155.040 relate back to the words "all aircraft" in ·subsection (5) of § 155.020 (the reporting section) thus ignoring the last prior antecedent, namely, "all aircraft operated in this state," and also ignoring a complete intervening section. That, in itself, would require a most strained construction. But counsel also say that the reporting requirement evidences an overall intent. The terms "all aircraft" of Section 155.020 and "the aircraft" of § 155.040 cannot be for all purposes identical. In the Delta case certain planes held in storage in New York for sale were required to be reported, but were held in the Divisional opinion *not* to be includable in "the aircraft" of § 155.040 even on the overall assessment basis there approved, because not in "air commerce." And certainly, while a lessor and a lessee might both be required to report the same aircraft under § 155.020, such craft could not ·validly be assessed twice under § 155.040. The· reporting requirement involving "all aircraft" may have many uses to the Commission; it seems apparent from the exhibits in our record that the Commission has required considerably more detailed information than is specifically called for by § 155.020. These include: information segregating craft flown in Missouri, with identification and individual values; arrivals and departures in Missouri; air and ground hours spent in Missouri and elsewhere; and the types, cost and year of purchase of all planes. But be all that as it may, the legislature has, in our view, fixed in § 155.-040 a definite and specific method for the assessment; and it would be most unseemly for us to rewrite those provisions upon ·our speculation that the requirements of a wholly different section should be substituted. In State ex rel. Hatten v. Kansas City Power & Light Co., Banc, 365 Mo. 296, 281 S.W.2d 784, it was contended that the County Court had authority to levy upon defendant's distributable property for the benefit of a fire district, because fire districts were then included by amendment in the applicable section governing the apportionment of such taxes by the tax commission; they were not included in the applicable sections providing for the actual assessment, certification and levy. The argument was made that there could be no purpose in requiring an apportionment to fire districts unless the legislature had intended that taxes would be levied for their benefit. The court rejected the argument holding that there was no authority to make such a levy unless the authority was given in the section authorizing the *levying* of the taxes. By analogy, it would seem that a mere requirement of the reporting of the number and value of all aircraft would not authorize the assessment of taxes upon all such property, or of taxes upon a ratio based thereon, unless reasonably so expressed in the assessment section. And see generally: State ex rel. Halferty v. Kansas City Power & Light Co., 346 Mo. 1069, 145 S.W.2d 116; State ex rel. Ford Motor Co. v. Gehner, Banc, 325 Mo. 24, 27 S.W.2d 1; Artophone Corporation v. Coale, 345 Mo. 344, 133 S.W.2d 343, 347; Crooks v. Harrelson, 282 U.S. 55, 59–61, 51 S.Ct. 49, 75 L.Ed. 156; A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544.

Counsel also urge that § 155.060, which concerns the levy and collection of the taxes by the *local government units,* provides that the taxes shall be levied and collected *"in the manner"* provided for the taxation of railroad property; thereby, of course, calling attention again to the fact that *all* rolling stock of the interstate railroads is included in the ratio applied. However, as we have already pointed out, that is done by the *specific* terms of § 151.060. Section 155.060 does not purport to have anything to do with the *assessment* of aircraft but only deals with the levying and collection of

the taxes by local officials after the Commission has fully assessed and apportioned them. There is nothing in that section which is inconsistent with our present holding. We fail to see that the words "in the manner" mean any more than the subsequent provision that the local officials shall "exercise the same powers" as they do with reference to railroad taxes, and if the legislature merely chose to say the same thing *twice,* it means no more than if it had been said once. The case of State ex rel. Buchanan County Power Transmission Co. v. Baker, 320 Mo. 1146, 9 S.W.2d 589, is cited. There the issue was who had the right to assess the property of an electric transmission line, the local officials or the state. The nature and extent of the property and the actual manner of the assessment were not in controversy. The statute there provided for the taxation of electric transmission lines (§ 13056, RS1919, as amended Laws 1923), provided specifically that the State Board of Equalization (replaced by the State Tax Commission) should have the same powers and should perform the same duties "in assessing, equalizing and adjusting" the taxes as it had with reference to railroad property, but it also provided that the taxes should be levied and collected "in the manner" provided for railroad property. The Court said, loc. cit. 592 of 9 S.W.2d, that the words "in the manner" covered not only the method of assessment but "[located] the authority * * * with the tax commission." Whatever the statement may mean, it was probably unnecessary to the decision inasmuch as the section specifically gave the same powers to the Commission in that matter as it had in railroad matters. But an essential and additional difference there and here is that the words appeared there in the very section giving the powers of assessment, while in ours they did not. The decision is neither controlling nor particularly persuasive here. In Felker v. Carpenter, Mo., 340 S.W.2d 696, the Court held that a statutory provision to the effect that taxes on public utilities should be "levied and collected in the manner" provided for the taxation of railroad property (the identical wording of § 155.060) did not give the County Collector the right to retain 1% of the taxes collected, as he was concededly permitted to do on railroad taxes. There the Court said in part, 340 S.W.2d, loc. cit. 701: "Section 153.030 says that taxes levied on the property therein dealt with shall be 'levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property * * *.' It appears that 'in the manner' as there used referred to the method provided in section 151.280 for the levy and collection of railroad taxes and did not deal or purport to deal with the subject of compensation to the collector for collecting those taxes. It seems to us that to read any such implication into the language of section 153.030 would do violence to the plain meaning of the words used and would violate the rule of strict, albeit reasonable, construction of such statutes." And see American Airlines, Inc. v. City of St. Louis, Mo., 368 S.W.2d 161, 170. We conclude that the words "in the manner" as applied to the levy and collection of the taxes by local officials, have no pertinent bearing upon the method of *assessment* of the taxes by the Commission.

In essence, appellants contend here: that the whole of Chap. 155 shows a legislative intent that the "unitary" rule of the railroad statutes shall be applied to aircraft; that *all* aircraft, everywhere, should be valued as an integrated whole and the average ratio applied thereto, thus apportioning to Missouri an enhanced value for the planes which actually acquired a taxable situs by being flown into the state. We have considered these views in the light of those cases which hold that a statute should be applied with regard to the apparent intent as expressed, and "with a view to promoting the apparent object of the legislative enactment." State ex rel. Halferty v. Kansas City Power & Light Co., 346 Mo. 1069, 145 S.W.2d 116, 122; In re Tompkins' Estate, Mo., 341 S.W.2d 866. We are unable to find an intent that property of airlines was to be assessed by the

same formula used for the rolling stock of interstate railroads under the appropriate statute. If the legislature so intended, why did it so radically alter the language? It is not a sufficient distinction to say merely that some railroads operate intrastate. In a taxing statute the legislature must say what it means and not leave the citizens and the courts to grope for a speculative intent not clearly disclosed. Nor can the courts, " * * under the guise of construction, supply authority which the General Assembly has not provided." State ex rel. and to Use of Benson v. Union Electric Co. of Mo., 359 Mo. 35, 220 S.W.2d 1, 3.

■ Appellants concede that the State may not validly assess an ad valorem tax upon those craft which never enter the State of Missouri; but it insists that it may constitutionally apply the average of the statutory ratios to the equalized valuation of *all* aircraft, in order to arrive at the value of those planes which enter Missouri, they being thus considered as part of an integrated whole. We do not hold here and now that it may not do so, subject to constitutional limitations, if the statutes should so provide. We simply do not reach that question or any of the constitutional questions which have been so fully argued, pro and con, for the present controversy has been decided on our construction of the statutes. We do not decide constitutional questions where not necessary to a decision of the case. State ex rel. State Board of Mediation v. Pigg, 362 Mo. 798, 244 S.W.2d 75; City of St. Joseph v. Roller, Mo., 363 S.W.2d 609; Rider v. Julian, 365 Mo. 313, 282 S.W.2d 484. And no one contends, for instance, that an assessment on the basis now directed would be so "grossly excessive" as to infringe constitutional limitations.

■ A contention was argued in the briefs concerning the impropriety of the Commission's method of depreciation. Administrative bodies have a considerable discretion in such matters which, unless unlawfully exercised, should not be interfered with. The trial court has taken no cognizance of any such contention, nor do we.

The findings, conclusions and judgment of the trial court, in so far as material to our ruling and as here considerably abbreviated, were as follows: (1) That the Commission was only authorized by statute to assess, adjust, equalize and apportion to Missouri, a part of the value of the 66 craft which were operated in Missouri, and that the Commission erred in doing otherwise. (2) That the Commission erred in assessing a portion of the value of all 194 aircraft of United, and that in so doing it deprived United of its property without due process and imposed an unlawful burden on interstate commerce. (3) That the Commission should have applied the assessment and apportionment formula only to such craft and types of aircraft as were operated in Missouri, namely, 28 of one class and 38 of another, in no event to exceed an assessed valuation of $264,287. (4) That the maximum assessment which the Commission could lawfully have made was $264,287. (5) That the assessment of $848,210 was "in excess of the statutory authority and jurisdiction" of the Commission, was not supported by substantial and competent evidence, was not authorized by law, was in violation of the due process and commerce clauses, and was unreasonable, arbitrary and capricious. The Court then ordered and adjudged: that the order of the Commission be reversed, and that the cause be remanded with directions to fix an assessment in an amount not inconsistent with the judgment; that the County Clerk was permanently enjoined from entering upon his records any assessed valuation exceeding $264,287, and he was required to recompute the taxes if he had used any greater sum.

We affirm that judgment, but with slight modifications. We concur in the reversal of the Commission's order and in the conclusions that only those types of planes operated in Missouri in air commerce may be valued for purposes of the assessment; as to (5) above, the grounds relied upon

# 453

should be confined to the statement that the decision and order of the Commission is in excess of its statutory authority and is unauthorized by law (§ 536.140; Mo.Const., Art. 5, § 22, V.A.M.S.). We disapprove of the rulings, under these circumstances, that the order of the Commission was violative of any constitutional provisions, for such rulings were unnecessary to the decision. If the Court intended in (3) to require the assessment *separately* of each type of aircraft which was flown in Missouri (as specifically argued in the Delta case), we find nothing in § 155.040 to require it. The paragraph is not entirely clear, and it should be modified to eliminate any argument concerning that requirement, as by eliminating the words "separate and distinct."

With the modifications noted, the judgment is affirmed and the cause is remanded for the entry of a revised order and judgment.

All concur, except HYDE and HOLMAN, JJ., who dissent.

### On Motion to Modify.

### PER CURIAM.

Appellants have filed a motion to modify the opinion, pointing out that while we have held that § 155.040 does not require the "assessment *separately* of each type of aircraft which was flown in Missouri," we have nevertheless approved the trial court's judgment limiting the maximum assessment to $264,287, being a figure arrived at by that method. This, of course, presents an inconsistency. We may say, initially and somewhat apologetically, that while the point was briefed by appellants, the brief did not deal specifically with the computations involved in that point, as does the present motion. The trial court's judgment contained the following: "3. That the State Tax Commission of Missouri should have applied, and under the governing statute could only apply, the statutory assessment and apportionment formula set forth in the

aforesaid Section 155.040, to such aircraft only and to only those separate and distinct types of classes of plaintiff's aircraft which were operated in Missouri in air commerce, to-wit, plaintiff's DC–6 Coach planes (28 in number) and its DC–7 First Class planes (38 in number), and should thereby have determined an initial Missouri assessed valuation for 1960 tax purposes, which, however computed, in no event should have exceeded Two Hundred Sixty-four Thousand Two Hundred Eighty-seven and No/00 Dollars ($264,287.00), for those of plaintiff's aircraft which were subject to taxation in Missouri, for said year." It fairly appears that the computation of the court was made on a "*by type*" basis, that is, by applying the formula separately to the valuation of all planes of each of the two types of planes operated in Missouri and by adding the results to obtain the total assessment of $264,-287. It is now demonstrated that, by applying the combined formula percentage of 1.173005 to the "lumped" depreciated values of both types of planes ($47,201,434) a figure of $553,675 results; applying the equalizing factor of 49% to that figure, the final result and the actual assessment would be $271,301. In other words, if the Commission was not required to use the "*by type*" approach, then its assessment, even upon our basic holding that the statutory formula could only be applied to the depreciated value of "aircraft operated in this state in air commerce," would have been $271,301 instead of $264,287, to which latter figure the trial court limited the assessment. Thus, the inconsistency is demonstrated. Appellants, as stated, briefed this point as a trial court error, but not by a demonstration of these figures out of the total accumulated mass of figures.

 We repeat that "we find nothing in § 155.040 to require" a by-type calculation. In our view the statute permits an assessment by either method and hence the larger figure, in the discretion of the Commission and in the absence of any constitutional restriction (and subject, of course, to the rulings of our original opinion). We

do not agree with the statement in the opinion in Division One in the Delta case that the statute specifically calls for "a final lump sum valuation of all * * * aircraft * * * and not a valuation by type." It would seem appropriate, however, that the Commission should not switch back and forth between the two methods in order to favor the state; we do not indicate that such has been done. We did not discuss any question of constitutional limitation, as applied to this question, for the simple reason that such an objection would only be applicable where the method used by the Commission was arbitrary, unfair, unreasonable, or confiscatory, as applied to the particular facts of this case. Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879; Norfolk and Western Ry. Co. v. North Carolina ex rel. Maxwell, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977. We find no constitutional problem here, for obviously a difference of $7,104 in such an assessment cannot be held to operate so unfairly and unjustly as to deprive Respondent of its property without due process or violate its rights of equal protection. We do not now pretend to rule any situation which may develop on some other state of facts, where conceivably the use of a particular method of computation might work an unconscionable result. We merely say that the *statute,* as we construe it, permits either the "lump" or "by type" approach and that there is nothing in the present facts to suggest any constitutional invalidity.

The statute, § 155.040, requires the Commission to assess and equalize "the valuation of all aircraft operated in this state"; and the valuation apportioned to this state shall be "the portion of the total valuation of the aircraft as determined * * *." There is no indication whatever in the wording of the statute that such valuation must be made separately *"by type"* of aircraft. Respondent argues that it is more fair and more logical to make the computations in that manner, in view of the radical differences in the valuations of the different types, and the differences in the use in Missouri of the different types. We merely construe the statute, we do not re-write it. The same argument could conceivably be made that the formula should be applied to each separate plane of each type flown in Missouri and the 66 different results aggregated, but that contention has not been made.

Our original opinion is modified to the extent that we now order that the figure $271,301 be substituted for the figure $264,287 wherever the latter figure appears in the judgment of the trial court. It is so ordered.